[No. 14238.   Department Two.   August 7, 1917.]

THE STATE OF WASHINGTON, *on the Relation of Mutual Union Insurance Company, Plaintiff,* v. H. O. FISHBACK, *State Insurance Commissioner, Respondent.*[1]

INSURANCE—REGULATION—POWERS OF COMMISSIONER—DISCRETION —REVIEW—MANDAMUS.   Under Rem. Code, § 6059-86, providing for permits to mutual insurance companies to write other classes of insurance, upon furnishing additional assets, if the "plans, terms, and conditions prescribed and adopted" be "found to be efficient and adequate" to meet its obligations, "of which the commissioner shall be the judge," mandamus will not lie to compel the insurance commissioner to issue a permit for fidelity and surety insurance, where the record fails to disclose what showing was made as to the efficiency and adequacy of its plans, etc., the only showing being as to the additional assets; since it cannot be determined that the commissioner's refusal was arbitrary or capricious; and in any event, he could only be compelled to exercise his discretion.

Application filed in the supreme court May 28, 1917, for a writ of mandamus to compel the state insurance commissioner to issue relator a license to write insurance.   Denied.

*W. R. Crawford* and *Morris B. Sachs,* for relator.

*The Attorney General* and *Frank P. Christensen, Assistant,* for respondent.

PARKER, J.—This is an original application in this court for a writ of mandate to compel H. O. Fishback, as state insurance commissioner, to issue to relator, the Mutual Union Insurance Company, a license certificate authorizing it to write "fidelity and surety insurance" as defined in Rem. Code, § 6059-83, subd. 5.   Relator is a duly organized domestic insurance company.   It alleges in its application for the writ that,

"The object for which this company was formed is to transact insurance against death, dismemberment and loss of sight, resulting from general accident; and also to do a lia-

[1]Reported in 166 Pac. 799.

bility insurance, being all insurance against loss and damage, resulting from accident to or injury, fatal or non-fatal, suffered by an employe or other person for which the insured is liable; and also to do a motor vehicle insurance business; and to do a fidelity and surety insurance, limited however, to giving surety bonds for and on behalf of members and policy holders in the company."

These, we assume, are the powers of the relator as set forth in its articles of incorporation. It is conceded that, in so far as its organization and the enumeration of powers in its articles of incorporation are concerned, relator can lawfully write fidelity and surety insurance. The question here for determination is: Has the relator the right to the issuance of a writ of mandate out of this court to compel the commissioner to issue to it a license authorizing it to write fidelity and surety insurance, upon the theory that this court can say, as a matter of law, that relator has complied with all the requirements of law entitling it to write such insurance, and that the withholding of a license therefor by the commissioner is such an arbitrary and capricious action on his part as to call for interference by this court.

Before noticing what relator has done looking to the acquisition of a license to write fidelity and surety insurance, let us briefly review the requirements of the statute in that regard, referring to the insurance code as found in Rem. Code. Section 6059-83 classifies the several kinds of insurance. Of these classes the following are all we are here concerned with: Class 4, being accident insurance; class 5, being fidelity and surety insurance; class 6, being liability insurance; and class 13½, being motor vehicle insurance. No insurance company can procure a license to write insurance of either of these classes without possessing a certain amount of assets. Upon proper showing in that regard, the commissioner is authorized to issue to an insurance company a license authorizing it to write insurance of one or more of the classes specified in § 6059-83, according as such com-

pany may show itself financially qualified so to do. These qualifications and the classes of insurance specified in § 6059-83 relate generally to stock insurance companies, and are to be referred to for the purpose of determining the qualifications of mutual insurance companies only when such companies seek license to write insurance of a class other than the kind of insurance such companies are specially authorized to write as mutual insurance companies. Section 6059-86 provides for the incorporation of mutual insurance companies and prescribes their qualifications for writing the particular kinds of insurance specified in that section, classes 4, 5, 6 and 13½ not being therein specified, which qualifications are different from those of other insurance companies. It is by complying with the provisions of that section relating especially to mutual insurance companies that such companies can procure license certificates to write the particular kinds of insurance specified therein. That section concludes as follows:

"Such company may make insurance in any other class specified in said section 6059-83 when permitted by the commissioner upon furnishing additional assets of the kind herein specified in the amounts required of a stock insurance company to make insurance in like classes as provided by this act.

"The plan, terms, and conditions prescribed and adopted by such company must be such as the experience of similar companies has found to be efficient and adequate to promptly and equitably pay and discharge its obligations and successfully conduct its business, of which the commissioner shall be the judge."

Thus it becomes plain that mutual insurance companies must not only have the prescribed financial qualifications to write insurance of classes 4, 5, 6 and 13½, as other insurance companies, but they must have other qualifications *"of which the commissioner shall be the judge."*

On May 15, 1917, relator applied to the commissioner for licenses authorizing it to write insurance of classes 4, 5, 6

and 13½, and made showing of its assets which it claimed were sufficient to entitle it to such licenses.   The commissioner, being satisfied that relator's showing was sufficient to authorize it to write insurance of classes 4, 6 and 13½, issued to it a license certificate accordingly, but refused to issue it a license to write insurance of class 5, to wit, fidelity and surety insurance.   Thereupon relator requested the commissioner to cancel its authority to write insurance of classes 6 and 13½ and to issue a license authorizing it to write insurance of class 5.

It is contended by counsel for relator that, since the commissioner determined that it was qualified to write insurance of classes 6 and 13½, it necessarily follows that it would be qualified to write insurance of class 5 upon cancellation of its authority to write insurance of classes 6 and 13½.   The showing here made by relator touching its qualification relates only to the amount of its assets as a whole.   No showing is made of its plan of insurance as to class 5, and we have seen that this is something to be shown the commissioner in addition to the showing to be made by companies other than mutual ones, and also that the sufficiency of this additional showing is a matter "of which the commissioner shall be the judge."   It seems plain to us that these considerations constitute a complete answer to the contention of counsel for relator.   Manifestly we cannot determine by the record before us as to whether or not the action of the commissioner in refusing the license certificate applied for was arbitrary or capricious.

But supposing that the showing here made were such that we could say the commissioner acted arbitrarily or capriciously, it would seem that we could do no more than decide that he should proceed to exercise his discretion.   We are unable to see how we could even then lawfully control his discretion.

The writ is denied.

ELLIS, C. J., FULLERTON, MOUNT, and HOLCOMB, JJ., concur.