[No. 22876. Department One. December 11, 1930.]

THE STATE OF WASHINGTON, *on Relation of George I. Clithero et al., Plaintiffs*, v. N. D. SHOWALTER *et al., Respondents.*[1]

*R. L. Edmiston, Raymond M. Hudson,* and *Samuel D. Wingate,* for relators.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondents.

TOLMAN, J.—Relators, by their petition and motion for the issuance of a writ of mandamus, filed as an original proceeding in this court, show that on September 9, 1930, they filed a petition with the state board of education asking the board to enter and promulgate an order requiring:

"(a)   That the Holy Scriptures known as the Bible, be read at least once each and every school day in each and every public common school, high school and other schools of the state public school system of the state of Washington.

[1]Reported in 293 Pac. 1000.

"(b)    That instruction be given in the Holy Scriptures known as the Bible, on at least two school days each school week in each and every public common school, high school and other schools of the state public school system of the state of Washington.

"(c)    That such reading and teaching of the Holy Scriptures known as the Bible be made compulsory in the curriculum of each and all of said above mentioned schools of the state public school system of the state of Washington.

"(d)    That such other use be made of the Bible as part of the public education inculcated that is in harmony with the right and justice in behalf of the citizen, the nation and its ordained Federal and state governments, and tending to national unity and perpetuity, under the nation founders covenant, mutual compact and dedicated life, fortune and sacred honor to the nation, as comprehended in the Declaration of Independence;

"(1)    As to Bible taught will and attributes of man's 'Creator' and endower with 'inalienable rights';

"(2)    As to the appeal to their 'Creator' as the 'Supreme Judge of the world for the *rectitude* of our intentions.'

"(3)    As to the citizen and nation 'firm reliance on the protection' of their Creator and nation founder referred to as 'Divine Providence.'

"(4)    As to citizen mutual compact, and dedication of life, fortune and sacred honor for national support, unity and perpetuity under and within the scope of that national foundation document;

"(5)    As to reasons and necessity for all sound ordained and enacted laws to conform, uphold and yield to this nation founding covenant, and to the spirit and principles thereof, rooted and grounded in the Bible and exercised under the English common law rules and our sound laws.

"(e)    That all proper, necessary and convenient actions be taken and had to put into effect and operation all of the aforegoing, with all orderly speed, and your petitioner will ever pray as in duty bound.''

That on September 26, 1930, the board acted on that petition as follows:

"MOVED, by Dean Cleveland, SECONDED by Superintendent Kern, that the secretary be instructed to write the petitioners that the board had given the petition careful consideration and had decided that they had no jurisdiction and no authority to make a decision of any kind upon the petition because it raised a constitutional question, and therefore they referred the matter back to the petitioners. CARRIED."

Construing this as a refusal to act upon their petition, the relators ask us to issue a writ of mandate commanding the following: (1) That the board vacate and rescind its action of September 26; (2) that it be required to receive and file relators' petition of September 9; (3) that the board consider and grant the prayer of that petition; and (4) that the board be ordered to promulgate appropriate rules and. regulations by which its action in granting the prayer of the petition can be carried into full force and effect.

The respondents have appeared by demurrer to the petition and motion based upon the following grounds: (1) That the relators have no legal capacity to sue; (2) that this court has no jurisdiction of the subject-matter; and (3) that the facts stated are insufficient to constitute a cause of action or to entitle relators to any relief by writ of mandamus, or otherwise.

We might very well sustain the demurrer upon the first ground, because it is well settled law that a private citizen or taxpayer, as such, cannot maintain a suit to restrain or coerce a particular course of action on the part of a state officer or board, unless he shows a direct, special and pecuniary injury to himself, separate and distinct from that suffered by the general public, the *Attorney General* having the sole right to maintain such an action in the interests of the

public. *Jones v. Reed,* 3 Wash. 57, 27 Pac. 1067; *Birmingham v. Cheetham,* 19 Wash. 657, 54 Pac. 37; *Tacoma v. Bridges,* 25 Wash. 221, 65 Pac. 186; *Powers v. Webster,* 47 Wash. 99, 91 Pac. 569; *State ex rel. Pacific American Fisheries v. Darwin,* 81 Wash. 1, 142 Pac. 441; *State ex rel. Dunbar v. State Board of Equalization,* 140 Wash. 433, 249 Pac. 996; *State ex rel. White v. Point Roberts Reef Fish Co.,* 42 Wash. 409, 85 Pac. 22.

But if relators be entitled to sue, still mandamus does not lie to control the discretion of a state officer or board. *State ex rel. Rosbach v. Pratt,* 68 Wash. 157, 122 Pac. 987; *State ex rel. Mutual Union Ins. Co. v. Fishback,* 97 Wash. 565, 166 Pac. 799; *State ex rel. Bellingham Publishing Co. v. Hinkle,* 120 Wash. 85, 206 Pac. 942.

While the relators' petition in form asks us to control the discretion of the board in the matters referred to, still if the relators have the right to sue, we might grant relief to the extent of directing the board to receive and act on the petition, leaving the board free to exercise its discretion and to grant or deny the petition on its merits as might be deemed proper, but we pass both of these questions without deciding either, preferring to rest our decision upon the merits.

The demurrer must be sustained upon the third ground because it does not state facts entitling relators to any relief. The questions presented have all been decided against relators' contentions in *State ex rel. Dearle v. Frazier,* 102 Wash. 369, 173 Pac. 35, L. R. A. 1918F 1056, where an elaborate argument was indulged in, cases from other jurisdictions were considered and § 11 of Art. I of our state constitution was held to forbid everything that is here demanded.

" 'A cardinal rule in dealing with constitutions is that they should receive a consistent and uniform in-

terpretation, so that they shall not be taken to mean one thing at one time and another thing at another time, even though the circumstances may have so changed as to make a different rule seem desirable. In accordance with this principle, a court should not allow the facts of the particular case to influence its decision on a question of constitutional law, nor should a statute be construed as constitutional in some cases and unconstitutional in others involving like circumstances and conditions. Furthermore, constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action; and therefore the courts should never allow a change in public sentiment to influence them in giving a construction to a written constitution not warranted by the intention of its founders.' 6 R. C. L. 46.'' *State ex rel. Banker v. Clausen,* 142 Wash. 450, 253 Pac. 805.

The relators, and we also, are bound by the constitution and by the construction heretofore given it. If dissatisfied or if convinced that public opinion has changed, relators may direct their efforts toward amending the constitution by popular vote and thus invoke the judgment of the people in whom resides the right to frame the constitution in accordance with the will of the majority.

The writ is denied and the action is dismissed.

MITCHELL, C. J., HOLCOMB, PARKER, and MAIN, JJ., concur.