William A. McGrath, president of the McGrath Candy Company, a corporation, died on May 21, 1935. At the time of his death, there were outstanding eight insurance policies on his life. Policy No. 1 for ten thousand dollars and policy No. 2 for five thousand dollars were issued by the Northwestern Mutual Life Insurance Company, and policy No. 3 for ten thousand dollars, by the Union Central Life Insurance Company. The beneficiary in these three policies was McGrath Candy Company. The other five policies were payable to Mrs. McGrath. The aggregate proceeds of all the policies amounted to $47,235.39.
All of the policies were taken out prior to the passage of chapter 180, Laws of 1935, p. 707 (Rem. Rev. Stat. (Sup.), § 8370-1 [P.C. § 7030-61] et seq.), which became effective about two months before McGrath's *Page 498 
death. Section 115, p. 784, of that act reads, in part, as follows:
"Insurance payable upon the death of any person shall be deemed a part of the estate for the purpose of computing the inheritance tax and shall be taxable to the person, partnership or corporation entitled thereto. Such insurance shall be taxable irrespective of the fact that the premiums of the policy have been paid by some person, partnership or corporation other than the insured, or paid out of the income accruing from principal provided by the assured for such payment, whether such principal was donated in trust or otherwise; Provided, however, That there is exempt from the total amount of insurance, regardless of the number of policies, the sum of forty thousand dollars and no more: Provided, however, That in the case of insurance upon the life of a decedent officer or employee of a corporation, payable to the corporation, or upon the life of a decedent, employee of or partner in a business enterprise, payable to one or more of the partners, where all the premiums upon such policy have been paid exclusively by such beneficiary, upon the death of the decedent the amount only of the proceeds of the policy in excess of the cash surrender value immediately preceding the death of the decedent shall be deemed a part of the estate for the purpose of computing the inheritance tax, and taxed as provided in class A, section 106 of this title.
"Where more than one beneficiary is entitled to the benefit of the provisions of this section exempting forty thousand dollars of the proceeds of insurance policies, payable upon death, the benefit of such exemption shall be apportioned among such beneficiaries ratably and proportionately: Provided, That where there is fraternal benefit society insurance payable upon the death of the decedent and other insurance payable upon the death of the decedent, the forty thousand dollars exemption shall first be taken from the fraternal benefit society insurance and if the same does not equal forty thousand dollars, then the balance of the forty thousand shall be prorated among other policies. *Page 499 
"The inheritance tax upon the proceeds of any insurance policy shall be a lien upon the proceeds of such policy in the hands or possession of the estate of the deceased insured or in the hands or possession of any other beneficiary under such policy to whom such proceeds may have been paid: Provided, That when proceeds of insurance payable upon death, or receivable by a beneficiary other than the executor or representative, the executor or representative shall recover from such beneficiary the tax due upon such proceeds of such policy or policies. The supervisor shall have power to release such lien with respect to all or any part of such proceeds if he be satisfied that the collection of the tax will not thereby be jeopardized." (Rem. Rev. Stat. (Sup.), § 11211b [P.C. § 7030-175].)
By subsequent provisions, the tax due upon the proceeds of any policy is made a lien upon the proceeds thereof, and, when proceeds of a policy are paid to any beneficiary other than the executor or representative, they are given the right to recover from such beneficiary the tax payable with respect to such proceeds.
During the administration of the estate, the supervisor of the inheritance tax and escheat division of the state tax commission filed his findings fixing the tax due. To these findings, the executrix and McGrath Candy Company filed exceptions raising a number of issues of law. After a hearing, the trial court entered a final decree of distribution embodying therein an order settling the inheritance tax in the amount of $11.36 instead of $334.62 as fixed by the supervisor. The appeal is from that portion of the decree.
The record is such that the decree must be affirmed if the trial court was correct in holding (1) that, under a proper construction of the statute, the forty thousand dollar exemption is applicable to the aggregate total amount of insurance on the life of the decedent; *Page 500 
and (2) that the proceeds of the two Northwestern Mutual policies, payable to McGrath Candy Company, are not lawfully taxable, under the provisions of § 115, chapter 180, Laws of 1935.
[1] It was, and is, the contention of the supervisor that the forty thousand dollars provided in the statute, with respect to insurance, is applicable only to those policies payable to the widow of the decedent. It is contended that § 115 divides insurance into two classes: First, insurance upon a decedent's life where the premiums were paid by him and the proceeds are payable to his estate or other beneficiaries designated by him; and second, insurance payable to a corporation or partnership on the life of a decedent officer or employee, whether or not the premiums are paid by such beneficiary. The forty thousand dollar exemption, says the supervisor, can be taken only out of insurance of the first class.
We do not agree with that construction of the statute. After providing that insurance shall be deemed a part of the estate for inheritance tax purposes and shall be taxable to the person, partnership, or corporation entitled thereto, irrespective of the fact that the premiums have been paid by some person, partnership or corporation other than the insured, the statute says:
"Provided, however, That there is exempt from the total amount of insurance, regardless of the number of policies, the sum of forty thousand dollars and no more: . . ."
It will be noted that the exemption is allowed "from the total amount of insurance," and not merely from a part of it. It is also provided later in the section that, where more than one beneficiary is entitled to the benefit of the provision exempting forty thousand dollars, the benefit of the exemption shall be applied *Page 501 
ratably and proportionately. The exemption being, in terms, "from the total amount of insurance, regardless of the number of policies," it seems clear to us that the trial court correctly held that all taxable policies are entitled to ratably participate in the benefits of the exemption, regardless of the identity of the beneficiaries.
[2] We come now to the second and more important question. We have seen that the statute provides that, in case of insurance upon the life of a decedent officer or employee of a corporation, payable to the corporation, where all the premiums upon the policy have been paid exclusively by such beneficiary upon the death of the decedent, the amount of the proceeds of the policy in excess of the cash surrender value immediately preceding his death shall be deemed a part of the estate for the purpose of computing the inheritance tax.
There were three policies upon the life of McGrath answering that description, one issued by the Union Central Life Insurance Company, and two by the Northwestern Mutual. The Union Central policy was taken out by McGrath himself. Although the beneficiary named was McGrath Candy Company, McGrath expressly reserved the right to change the beneficiary at any time during the continuance of the policy. The policy also contained the following provision:
"The insured may exercise every right and receive every benefit reserved to the insured or the owner of the policy, including the right of assignment, and may agree with the company to any change in or amendment of the policy without the consent of any beneficiary."
The two Northwestern Mutual policies, payable to McGrath Candy Company, were taken out upon the applications of the McGrath Candy Company. The McGrath Candy Company paid all the premiums *Page 502 
thereon. McGrath, of course, had no right to change the beneficiary in these policies or do anything with relation to them. The ten thousand dollar policy contained this endorsement:
"It is agreed that this policy shall apply to and be under the control and disposition of the beneficiary corporation without the consent of the insured."
In the five thousand dollar policy, the same provision was contained in the application, which was, by reference, made a part of the policy. The trial court held that the proceeds of the Union Central policy, in excess of its cash surrender value immediately preceding the death of the decedent, were lawfully taxable, but that the proceeds of the two Northwestern Mutual policies were not. We are in complete accord with that holding, for the following reasons:
Although § 115, providing for inheritance taxes on insurance, is a part of a general act entitled "Revenue Act of 1935," and although the word "tax" is used throughout that subdivision of the act entitled "Inheritance Tax," the amounts collected as inheritance taxes by the state under the act or by the Federal government as estate taxes under its laws and statutes pertaining to that matter, are not taxes in a strict sense; that is to say, they are not collected by virtue of the right of the sovereign to exact from its citizens contributions from the corpus of their property for the support of the government. They are taken only out of property to which the right of ownership has temporarily been suspended by death. The sovereign is the permissive intermediary through which the property of a decedent passes to his heirs or legatees; and, while the property is in its legal custody, it can take out of it what it will. What it retains, if it be withheld upon the theory that it is, in effect, a charge made in exchange for permission to a decedent to pass *Page 503 
title to his heirs or legatees, we call an estate tax; or if it be withheld on the theory that it is a charge for the privilege of permitting the heir or legatee to take the property, we call it an inheritance tax.
It is universally agreed that the right of the sovereign to control the transfer is the sanction upon which all such exactions rest, whether they be called estate taxes, succession taxes, inheritance taxes, or privilege taxes. It is, therefore, in the very nature of things, impossible for an estate or inheritance tax to be exacted with respect to something in which the decedent did not own or have some kind of right at the time of his death, for in such a case there is no transfer.
That an estate tax cannot be collected with respect to property unless some right in it be transferred by the death of the decedent, is held in many cases. We cite here only those which are leading and recent. Lewellyn v. Frick, 268 U.S. 238,45 S.Ct. 487, 69 L.Ed. 934; Helvering v. St. Louis Union TrustCo., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239;Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78,80 L.Ed. 35; Bingham v. United States, 296 U.S. 211,56 S.Ct. 180, 80 L.Ed. 160.
It was held in the case of Chase Nat. Bank v. United States,278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388, that, where an insured has reserved the power to change the beneficiary in a policy issued upon his life, there is a taxable shifting of economic benefit when the power is terminated by his death.
The trial court correctly held in the case at bar, upon the principle applied in the Chase Nat. Bank case, that the Union Central policy is taxable. As hereinbefore stated, the policy contained the following provision:
"The insured may exercise every right and receive every benefit reserved to the insured or the owner of *Page 504 
the policy, including the right of assignment, and may agree with the company to any change in or amendment of the policy without the consent of any beneficiary."
Prior to the death of McGrath, the right of McGrath Candy Company to the proceeds of this policy was defeasible. McGrath's death rendered it indefeasible. Hence, there was a shifting of economic benefit.
[3] The ruling of the court in holding the Northwestern Mutual policies not taxable is equally sound. They were taken out by McGrath Candy Company. It was the beneficiary named in the policies and paid all the premiums. The policies contained the following provision:
"It is agreed that this policy shall apply to and be under the control and disposition of the beneficiary corporation without the consent of the insured."
The death of McGrath added nothing to the company's right to the proceeds of the policies, for the right was from the beginning complete and indefeasible.
About a month after the trial court rendered its decision in the case at bar, an opinion was handed down by the circuit court of appeals of the eighth circuit in Helvering v. Parker,84 F.2d 838, from which we quote as follows:
"Where an insured reserves the right to surrender and cancel policies of life insurance, to pledge them for loans, and to dispose of them and their proceeds for his own benefit during life, the termination of that right by death is a transfer within the reach of the taxing power. Chase National Bank v. UnitedStates, 278 U.S. 327, 335, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Walker v. United States, (C.C.A. 8) 83 F.2d 103, 108. Where the insured reserves no rights incidental to ownership or control of the policies, so that death transfers nothing to the beneficiary and shifts no economic benefits, there is no *Page 505 
transfer within the reach of the taxing power, and such policies are not covered by the statute. Industrial Trust Co. et al. v.United States, 296 U.S. 220, 56 S.Ct. 182, 80 L.Ed. 191;Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180,80 L.Ed. 160; Walker v. United States, (C.C.A. 8) 83 F.2d 103, 108, 110."
The court might have cited many other cases, had it chosen to do so. See, for example, Robinson v. United States,12 F. Supp. 550, and cases therein cited.
The opinions in Helvering v. Parker and Robinson v. UnitedStates, supra, and the cases therein cited, deal with the Federal estate tax, but, obviously, the same principles must apply to inheritance taxes, for in neither case can there be any tax unless there is a transfer.
In the case of Werthan v. McCabe, 164 Tenn. 611,51 S.W.2d 840, it appears that Morris Werthan, a resident of Tennessee, was president of a bag company, which insured his life for the sum of two hundred fifty thousand dollars. It was irrevocably designated as beneficiary in the policies and paid all the premiums. A seventy-five thousand dollar policy was also issued on Werthan's life to his wife as beneficiary, she paying all premiums out of her separate estate. Three policies aggregating sixty-six thousand dollars were procured by Joe Werthan on the life of his brother, Morris, with whom he was associated in business, Joe Werthan paying all the premiums. Morris Werthan did not contract with the insurers so far as any of these policies were concerned, did not apply for them, never paid any of the premiums, had no right to change the beneficiaries as designated therein, and had no control over or interest in the surrender value of said policies. Upon the death of Morris Werthan, the Tennessee commissioner of finance and taxation attempted to collect inheritance taxes with *Page 506 
respect to those policies under a statute reading, in part, as follows:
"`If the decedent was a resident of this State, there shall be included in the gross estate the proceeds of insurance policiespayable to named beneficiaries, or to his estate, or in such manner as to be subject to claims against his estate and to distribution as a part thereof; . . .'" (Italics ours.)
It will be noted that the statute, in terms, included the described policies, since they were payable to "named beneficiaries." In holding that they were not taxable, the supreme court of Tennessee said:
"The theory of the Inheritance Tax law is that where one transmits property to another by will, under the intestate statutes, or in contemplation of death, a tax is imposed upon the privilege of succeeding to the ownership of the property. Where no property or interest therein is transferred necessarily there is no tax. The insurance companies contracted with the Bag Company, and the other beneficiaries, that upon the payment of certain annual premiums they would pay them certain sums upon the death of Morris Werthan, which they did. Werthan was not a party to these contracts, had not expended so much as a dollar for this insurance, and had no interest in the policies or their proceeds. Hence, there was no transfer from the estate of Werthan to these beneficiaries. If A purchases from B a tract of land upon agreement that possession is to be withheld until the death of C, certainly A acquires no interest in the land from C upon his death. Or if X agrees to pay Y a certain sum upon the death of Z, upon the happening of that event Y succeeds to no part of the estate of Z. That, in principle, is this case. It is not unusual for parties to contract for the doing of an act or the payment of a sum of money upon the happening of some contingency, such as birth, marriage or death."
[4] There are other considerations which require us to sustain the holding of the trial court that the *Page 507 
two Northwestern Mutual policies could not lawfully be taxed under § 115, chapter 180, Laws of 1935. The McGrath Candy Company was not merely the owner of the surrender value of the policies. It had purchased and paid for the full, complete, and exclusive right to the entire proceeds of the policies. Every beneficial interest in them of every kind and character had vested in it before the passage of chapter 180. Prior to the passage of that act, McGrath Candy Company had agreed, in the two contracts of insurance, to pay certain premiums to the Northwestern Mutual in consideration of its obligating itself to pay the McGrath Candy Company stated sums upon the event of the death of McGrath. An act, subsequently passed, authorizing the taking from those sums of an exaction in the guise of an inheritance tax, would impair the obligation of those contracts, within the meaning of § 10, Art. I of the Federal constitution:
"No state shall . . . pass any . . . law impairing the obligation of contracts; . . ."
and it would at the same time conflict with § 23, Art. I of our own constitution, which is as follows:
"No . . . law impairing the obligations of contracts shall ever be passed."
In re Heilbron's Estate, 14 Wn. 536, 45 P. 153, 35 L.R.A. 602.
In the case of Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306,75 L.Ed. 562, which went to the supreme court of the United States from Massachusetts, it appeared that Coolidge and wife, residents of that state, had conveyed certain property to trustees by trust deeds. They were to receive the income from the property during their lives, and upon the death of the survivor the property was to be divided equally among their five sons. It was provided in the deeds or declarations of trust that it could not be revoked *Page 508 
or in any way modified. When the trust deeds were executed, there was no statute in effect under which the succession to the trust property could have been subjected to tax, but one was passed before the deaths of the settlors. In holding that the sons could not lawfully be required to pay a tax when they received physical possession of the property upon the death of their parents, the supreme court of the United States said:
"The trust deeds are contracts within the meaning of the contract clause of the Federal Constitution. They were fully executed before the taking effect of the state law under which the excise is claimed. The Commonwealth was without authority by subsequent legislation, whether enacted under the guise of its power to tax or otherwise, to alter their effect or to impair or destroy rights which had vested under them. . . .
"This court has not sustained any state law imposing an excise upon mere entry into possession and enjoyment of property, where the right to such possession and enjoyment upon the happening of a specified event had fully vested before the enactment."
In the Coolidge case, the right to take possession of the property on the event of the death of the parents arose, was created, and was vested in the sons when the irrevocable trust deed was executed, and a statute, subsequently passed, authorizing a tax upon it, would, if enforced, impair the preexisting right to take the property. In the case at bar, the right of the McGrath Candy Company to take the full proceeds of the Northwestern Mutual policies upon the death of McGrath arose, was created, and was vested in the company, when the insurance contracts were executed; and any subsequent statute passed during the existence of the contracts providing for the taxation of that right would, if enforced, impair the obligation *Page 509 
of those contracts, for the McGrath Candy Company would then receive less than it was entitled to receive according to the terms thereof.
It was further held in the Coolidge case (a state statute being involved) that, if the statute should be construed to authorize the taxation of the right to receive the property, it would conflict with the due process clause of the fourteenth amendment to the Federal constitution, and we think that, if § 115 of chapter 180, Laws of 1935, should be construed to authorize the taxing of the proceeds of the two Northwestern Mutual policies, the same result would follow.
Neither the contract impairment provision of the constitution of the United States nor the fourteenth amendment to the Federal constitution are limitations upon the powers of Congress, but it is interesting to note that the supreme court of the United States has held on many occasions that laws of Congress impairing preexisting contracts or vested rights are violative of the due process clause of the fifth amendment. Nichols v. Coolidge,274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Blodgettv. Holden, 275 U.S. 142, 45 S.Ct. 105, 72 L.Ed. 206; Untermyerv. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645.
In holding in Blodgett v. Holden that gifts made before the passage of a Federal statute could not lawfully be made taxable thereby, on the ground that such a course would be so arbitrary as to constitute a violation of the due process clause of the fifth amendment to the Federal constitution, the court said:
"It seems wholly unreasonable that one who, in entire good faith and without the slightest premonition of such consequence, made absolute disposition of his property by gifts should thereafter be required to pay a charge for so doing." *Page 510 
It seems equally unreasonable that one who, in entire good faith, without the slightest premonition of such consequence, invests his money in insuring the life of another, should thereafter be required to pay a charge for receiving the proceeds of his investment, and it would seem that a state statute authorizing such a charge would be held to violate the due process clause of the fourteenth amendment.
Finally, it seems to us that the principles invoked by the supreme court of the United States in the trust and gift cases hereinbefore referred to should apply with even greater force in the case at bar. The decedents in those cases once owned the property, and they did transfer it. But, here, the decedent never had any ownership or right of any kind in the policies in question or in the proceeds thereof. He had no vestige of control over them. He did not take them out. He did not pay the premiums. As the trial judge somewhat whimsically, but very pertinently, remarked in his memorandum opinion, he furnished nothing except the death.
The judgment and decree appealed from is affirmed.
STEINERT, C.J., TOLMAN, BEALS, and HOLCOMB, JJ., concur. *Page 511