[No. 44217.   En Banc.   January 7, 1977.]

JAPAN LINE, LTD., ET AL, *Petitioners*, v. MARY ELLEN
McCAFFREE, *Respondent*.

*Howard, LeGros, Buchanan & Paul,* by *Richard W.
Buchanan* and *James F. Whitehead III,* for petitioners.

*Slade Gorton, Attorney General, Richard H. Holmquist, Senior Assistant,* and *Leroy E. Dreisbach, Assistant,* for respondent.

DOLLIVER, J.—This is an application for a writ of mandamus. The petitioners are owners and operators of container vessels engaged in foreign commerce between Japan and Seattle. In July of 1969, they entered into a written contract, currently effective until November 1, 1977, with the Port of Seattle which permitted berthing of their vessels at the Port and the utilization of one of its container cranes.

During 1975, the King County Assessor, under applicable state law, placed an assessed value on the "leasehold estate" of each petitioner in the amount of $159,080. In October of 1975, the King County Council enacted an ordinance fixing the amount of the real and personal property tax levy. After the County Board of Equalization had corrected errors on the assessment rolls, the King County Council amended its prior ordinance and in December of 1975 set the amounts of the tax levies to raise the amounts needed for the estimated expenditures of the county and the various taxing units within the county for the ensuing year.

The county assessor then extended the ad valorem property taxes against individual property on the tax rolls. Petitioners' leasehold estate assessments were included. In January of 1976, the assessor certified the list of taxes levied which was delivered to the county comptroller. The comptroller established the tax roll and placed the property tax statements on the rolls. On February 14, 1976, he mailed the statements to all taxpayers.

On February 16, 1976, the Governor signed Laws of 1975, 2d Ex. Sess., ch. 10, p. 19, to delay collection of property taxes in the state until March 1, 1976. On March 1, he signed into law House Bill No. 971, Laws of 1975, 2d Ex. Sess., ch. 61, p. 225. It provides, in relevant part:

Sec. 3. There is hereby levied and shall be collected a leasehold excise tax on the act or privilege of occupying or using publicly owned real or personal property through a leasehold interest on and after January 1, 1976, at a rate of twelve percent of taxable rent . . .

. . .

Sec. 16. The department of revenue of the state of Washington shall make such rules and regulations consistent with chapter 34.04 RCW and the provisions of this 1976 amendatory act as shall be necessary . . .

On March 2, 1976, petitioner Mitsui O.S.K. Lines, Ltd., paid to the comptroller $1,070.69, which is one–half of the total sum indicated on the property tax statement pertaining to the petitioner's leasehold estate.

The Department of Revenue, by letter dated March 3, 1976, advised all county assessors and treasurers that they should immediately cancel all 1975 property tax assessments or levies for collection in calendar year 1976 on leasehold estates. The Department notified the Port of Seattle of its position that the new law canceled all assessments and levies of personal property taxes on leasehold interests for collection in 1976 and that the first remittance of the 12 percent leasehold excise taxes collected for the quarter commencing January 1, 1976, would be deemed delinquent if not paid by May 30, 1976.

This leasehold tax results in a tax billing to each of the petitioners of approximately $9,919 during 1976. According to a revenue estimate prepared by the Department, and utilized by the legislature in the passage of this bill, the ad valorem property taxes and in lieu excise taxes on public leasehold estates would have been approximately $4.1 million if the old law had continued in effect for 1976 collections. Total statewide leasehold tax revenues from the tax imposed by adoption of House Bill No. 971 would be approximately $5.1 million.

The respondent has questioned whether petitioners have standing to institute this action. While there may be some substance to respondent's position (see *Tacoma v. O'Brien,* 85 Wn.2d 266, 534 P.2d 114 (1975); *Herrold v. Case,* 42

Wn.2d 912, 917, 259 P.2d 830 (1953); *State ex rel. Gebhardt v. Superior Court,* 15 Wn.2d 673, 131 P.2d 943 (1942)), we prefer to rest our decision on the merits. *See State ex rel. Clithero v. Showalter,* 159 Wash. 519, 293 P. 1000 (1930).

The first issue raised by the petitioners is whether the imposition of the leasehold tax retroactive to January 1, 1976, constitutes a violation of due process. We have held in two previous cases that a tax which had a retroactive application was violative of due process. *Bates v. McLeod,* 11 Wn.2d 648, 120 P.2d 472 (1941); *In re Estate of McGrath,* 191 Wash. 496, 71 P.2d 395 (1937). However, we emphasize the position taken in *Bates v. McLeod, supra* at 656, that "the mere fact that a tax is retroactive in operation is not of itself sufficient to justify a holding that it is unconstitutional." There we noted that most, if not all, federal income tax acts apply to income received since the first of the year in which they are enacted or even received during the year preceding the enactment of the statute. The legislature has broad plenary powers in its capacity to levy taxes. It can fix the subject of taxation and exempt property; it can limit or extend the time of payment. *See Gasaway v. Seattle,* 52 Wash. 444, 100 P. 991 (1909). The Supreme Court observed in *Seattle v. Kelleher,* 195 U.S. 351, 360, 49 L. Ed. 232, 25 S. Ct. 44 (1904), that liability for taxes under retroactive legislation has been "one of the notorious incidents of social life."

██ We have imposed narrow and specific limits on the legislature's broad powers in regard to a retroactive tax which are applicable to the disposition of this case. In *Bates v. McLeod, supra,* the tax in question was an excise tax upon the privilege of employing others. The novelty of the tax, the taxing of a privilege which had formerly been freely enjoyed, rather than the retroactivity itself, caused the tax to be unconstitutional. We relied in part upon *Blodgett v. Holden,* 275 U.S. 142, 147, 72 L. Ed. 206, 48 S. Ct. 105 (1927), in which the Supreme Court held that the retroactive application of the federal gift tax was violative

of due process. That court focused on the fact that the tax-payer had disposed of his property by gift "in entire good faith and without the slightest premonition of such consequence". In *In re Estate of McGrath, supra,* holding that the retroactive application of an inheritance tax was violative of due process, we again noted the unexpected nature of the tax. In that case, the McGrath Candy Company purchased life insurance policies 2 months prior to the decedent's death and before the passage of a statute which, for the first time, made such assets a part of the decedent's estate for inheritance tax purposes.

In judging the constitutionality of the retroactive application of the leasehold tax before us, we examine the tax to determine whether it has been imposed for the support of the general government or for some narrow purpose and whether it is novel in character. *Bates v. McLeod, supra; see also Imperial Drum & Bugle Corps v. Seattle,* 14 Wn. App. 845, 545 P.2d 1235 (1976). In regard to the first of these criteria, Laws of 1975, 2d Ex. Sess., ch. 61, § 1, p. 225, provides in part:

> The legislature hereby recognizes . . . that private lessees of . . . public properties receive substantial benefits from governmental services provided by units of government.
>
> . . .
>
> The legislature finds that lessees of publicly owned property are entitled to those same governmental services and does hereby provide for a leasehold excise tax to fairly compensate governmental units for services rendered to such lessees of publicly owned property.

The leasehold tax was clearly designed to impose a true tax for the direct support of government.

As to the novelty of the excise tax, the taxing of the private use of public property was not new as of January 1, 1976, nor was the controversy over the form and measure of the tax most appropriate to the subject matter. Prior to this date, the petitioners were paying ad valorem taxes on their leasehold estates. The new tax was enacted after a 6–year controversy over the best and most equitable manner

of taxing benefits received by the lessees. While the form of the tax is new, the subject matter had previously been taxed. Therefore, petitioners' contention that the tax is "novel" is not supported by the facts.

The petitioners next contend that cancellation of the ad valorem tax with the concurrent enactment of a leasehold tax constitutes a gift of state funds in violation of Const. art. 8, §§ 5 and 7. Petitioners' rather ingenious theory is that, although the new tax is higher than the repealed tax, the State or county is making a "gift" of state funds by repealing a tax to which it is entitled. This is because the State allegedly has the power to demand both taxes. Therefore, the petitioners are the recipients of the "gift" they are contesting.

■ The manifest purpose of these provisions in the constitution is to prevent state funds from being used to benefit private interests where the public interest is not primarily served. *State Highway Comm'n v. Pacific Northwest Bell Tel. Co.*, 59 Wn.2d 216, 367 P.2d 605 (1961); *see, e.g., State Higher Educ. Assistance Authority v. Graham*, 84 Wn.2d 813, 529 P.2d 1051 (1974) (public funds used to purchase loans made to students from commercial lenders); *State ex rel. O'Connell v. Port of Seattle*, 65 Wn.2d 801, 399 P.2d 623 (1965) ("promotional hosting" of shippers, businessmen and others); *State ex rel. Washington Nav. Co. v. Pierce County*, 184 Wash. 414, 51 P.2d 407 (1935) (state subsidy to private ferry operators); *Port of Longview v. Taxpayers*, 85 Wn.2d 216, 533 P.2d 128 (1974) (loaning of money or credit to finance pollution control facilities).

The legislation makes it clear that the excise tax was intended to replace the ad valorem tax. The legislation, as a part of section 22 of House Bill No. 971, Law of 1975, 2d Ex. Sess., ch. 61, § 22, p. 232–33, contains the following proviso:

PROVIDED, That in the event the cancellation of assessments or levies of property taxes for collection in calendar year 1976 as provided for in section 17 of this 1976 amendatory act is declared null and void, then the effective date of this 1976 amendatory act shall be January 1, 1977.

The only case cited by the petitioners which even remotely supports their contention is *Yakima v. Huza,* 67 Wn.2d 351, 407 P.2d 815 (1965). In this case the taxpayers attempted to force an election on an initiative, seeking to repeal retroactively two city ordinances and to allow future tax credits on all taxes collected under the repealed ordinance. This court held that a tax ordinance which had been validly enacted could not be repealed retroactively and that the tax money collected could not be refunded without violating Const. art 8, § 7. *Yakima* is readily distinguishable from this case in that here we do not have a tax credit; rather, we have a new tax substituting for a prior tax. There is no credit given, but rather a heavier tax burden being placed on the petitioners. The new excise tax was clearly intended to raise an estimated additional $1 million revenue annually. The constitutional provisions in question do not prohibit the repeal of one tax to be replaced by another. Accordingly, we find petitioners' attack on the tax in question as violative of Const. art. 8, §§ 5 and 7, while imaginative, to be without merit.

The final issue raised by petitioners is whether the legislature can exempt a class of property from ad valorem property tax following a valid levy and still escape the prohibition of Const. art. 8, § 5 or § 7. Since we have found that there is no article 8, section 5 or section 7 violation in this case, we find it unnecessary to reach the question raised by the petitioners.

Petitioners' application for writ of mandamus is denied.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.