State Representative, 32nd District Olympia, WA 98504-0600 P.O. Box 40600
Dear Representative Kagi:
By letter previously acknowledged, you have requested our opinion with respect to the following question:
 May a municipal sewer district repair or replace private side sewers as part of a district-wide infiltration and inflow reduction program where (a) aging and inadequate side sewers are the most significant contributor to infiltration and inflow in the district's entire system; (b) the purpose of the program is to benefit the district and the public through lower long-term capital and maintenance costs, not private property owners; (c) repair or replacement would be subject to a right of entry from the private property owner; and (d) the program costs will be paid back through the district's bi-monthly sewer rates?
 BRIEF ANSWER
Municipal sewer districts have statutory authority to maintain or operate the sewer system by repairing or replacing side sewers if doing so results in increased sewer capacity by reducing infiltration and inflow into the sewer system. The exercise of this statutory authority does not constitute a gift of public funds if the municipal sewer district does not have a donative intent and it is able to demonstrate that the expense will result in sufficient benefit to the public.
 BACKGROUND
Your question concerns a municipal sewer district that owns and operates sewer mains and lift stations that transport wastewater and sewage to treatment plants.[1] Side sewer lines [originalpage 2] collect waste and stormwater from individual homes and buildings and connect to the sewer district's system of pipes and pumps. The side sewer lines are owned by individual property owners, not the sewer district.
The sewer district is experiencing infiltration and inflow from the side sewer lines. Infiltration takes place when groundwater enters the side sewers through deteriorated or damaged side sewer pipes. U.S. Envtl. Prot. Agency, Sewer System InfrastructureAnalysis and Rehabilitation 91 (1991). Inflow occurs when stormwater is discharged into side sewers or the sewer system through direct connections, such as downspouts, foundation drains, and driveway drains. Id. Infiltration and inflow "is the major deterrent to the successful performance of a wastewater conveyance or treatment system." Sewer SystemInfrastructure at 19 (citing Technology and DesignDeficiencies at Publicly Owned Treatment *Page 2 Works, Water Env't Tech., (Dec. 1989)). It can cause excessive wear on pumping station equipment, high power costs, and the need for construction of new or additional sewer facilities earlier than the date projected. Id. Infiltration and inflow can also cause overloaded sewer systems and treatment plants to flood streets and basements and release untreated wastewater into waterways. Id.
 ANALYSIS
A municipal sewer district may repair or replace private sewers if it has statutory authority to do so, and if paying for such repairs or replacements would not violate the state constitutional prohibition against the gifting or lending of public funds. We conclude that municipal sewer districts have the necessary authority and that its exercise would not transgress the state constitution.
We begin by briefly considering the statutory authority of municipal sewer districts. RCW 57.08.005(5) provides authority to municipal wastewater districts "to construct, condemn and purchase, add to, maintain, and operate" sewer systems for a variety of purposes, including provision of "an adequate system of sewers" and "control of pollution from wastewater." In addition to possessing the authority granted by RCW 57.08, municipal sewer districts are authorized to exercise any of the powers granted to cities and counties with respect to the maintenance and operation of waterworks and systems of sewage and drainage. RCW 57.08.005(21). Cities and towns have authority to "construct, condemn and purchase, acquire, add to, maintain, conduct, and operate" sewer systems "together with additions, extensions, and betterments thereto, within and without its limits." RCW 35.67.020(1). Counties have similar authority to "establish . . . operate, and maintain" a sewer system. RCW 36.94.020.
The statutory authority of a municipal corporation is limited to the power conferred by statute and the constitution, necessarily implied or incident to the powers expressly granted, or essential to the declared objects and purposes of the corporation. Okeson v. City of Seattle, 159 Wn.2d 436, 445, 150 P.3d 556 (2007). The Washington Supreme Court has explained that "if municipal utility actions come within the purpose and object of the enabling statute and no express limitations apply, [the] court leaves the choice of means used in operating the utility to the discretion of municipal authorities."City of Tacoma v. Taxpayers of Tacoma,108 Wn.2d 679, 695, 743 P.2d 793 (1987).
[original page 3] The Washington Supreme Court considered the scope of similar municipal utility authority in Taxpayers ofTacoma. That case involved RCW 35.92.050, which provides cities authority to "maintain and operate" electrical facilities, and purchase and sell power to its residents. Tacoma's electric utility invested in energy conservation audits and paid for the installation of conservation measures on the private property of its ratepayers.Taxpayers of Tacoma, 108 Wn.2d at 683. The evidence in the record demonstrated that that "investment in conservation is considered the equivalent of purchasing electricity or of purchasing an electric generating facility." Id. at 693. In determining whether the expenditures were permitted, the Court considered whether the conservation program bore a "sufficiently close nexus to the purpose and object" of the city's statutory authority to operate the electrical utility. Id. at 696. The Court found that "the policy underlying legislative authorization of municipal utilities was the belief that municipalities could provide lower cost and more efficient electrical service." Id. Noting the "heavy environmental and financial costs" of generating additional power, the Court stated conservation "offers the cheapest and cleanest alternative for meeting future electrical supply needs."Id. at 696-97. The Court concluded that Tacoma had not exceeded its authority "to own and manage an electric utility and to purchase and sell power". Id. at 700.
As with the conservation measures considered in the Tacoma case, expending funds to repair side sewers that are causing infiltration or inflow is within the statutory authority to construct, maintain, and operate a sewer system. RCW 57.08.005(5); RCW 35.67.020(1); RCW 36.94.020. In addition, repair and replacement falls within the sewer district's statutory authority to control "pollution from wastewater" if it prevents an overloaded system from polluting streets, waterways, and private property with untreated wastewater. RCW 57.08.005(5).
In exercising its statutory authority, a municipality may not act contrary to constitutional limitations. Okeson, 159 Wn.2d at 447. The Washington Constitution prohibits state and local governments from giving or loaning public funds to *Page 3 
private individuals, companies, or associations. Article VIII, section 5 states: "The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation." Article VIII, section 7 states:
 No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.
Although sections 5 and 7 are worded differently, the Washington Supreme Court has held that they have the same meaning and are to be analyzed in the same manner. CLEAN v. State,130 Wn.2d 782, 797, 928 P.2d 1054 (1996). The purpose of the provisions is "`to prevent state funds from being used to benefit private interests where the public interest is not primarily served.'" Id. (quoting Japan Line, Ltd. v. McCaffree,88 Wn.2d 93, 98, 558 P.2d 211 (1977)). The question of whether a gift of public funds has occurred is resolved by (1) determining whether the governmental body had a donative intent and (2) examining the consideration received by the public.CLEAN, 130 Wn.2d at 798.
[original page 4] The Washington Supreme Court's analysis of these factors in the Taxpayers of Tacoma case is closely analogous to the question you have presented. In Taxpayers ofTacoma, the Court found that despite the fact that the conservation measures benefitted individuals by decreasing their utility bills, the city did not act with donative intent. "Aid to individuals is not absolutely prohibited under our law but is only improper where public money is used solely for private purposes."Taxpayers of Tacoma, 108 Wn.2d at 705 (quoting State v. RalphWilliams' N. W. Chrysler Plymouth, Inc.,82 Wn.2d 265, 277, 510 P.2d 233 (1973)). The Court found that any benefit received by individuals was incidental to the public benefit of meeting future power needs by using the energy saved through the conservation measures. As in the Taxpayers of Tacoma case, private property owners may benefit from the repair or replacement of side sewers. However, if the private benefit is merely incidental to the public benefit of increasing sewer capacity, there would not be a donative intent.
In determining whether the consideration received by the public as a result of the energy savings was acceptable, the Court applied a legal sufficiency test. Taxpayers of Tacoma, 108 Wn.2d at 703;see also King Cy., 133 Wn.2d at 597. The Court stated that if the consideration received is not "grossly inadequate," the courts will not analyze whether the public received consideration that was equal to the expenditure. Taxpayers of Tacoma,108 Wn.2d at 703. In Taxpayers of Tacoma, the Court found that the consideration was not grossly inadequate, because the city demonstrated the number of kilowatts of electricity that were likely to be saved in the first year after installation of the conservation measures. Id. at 703-4. As in the Taxpayers of Tacoma
case, a municipal sewer district could demonstrate the adequacy of consideration by analyzing the amount of increased sewer capacity it predicts will be obtained through the repair or replacement of side sewers. If the sewer district does not have a donative intent, and it is able to provide an analysis of the predicted increased sewer capacity, we do not believe the repairs or replacement would constitute a gift of public funds.
Our analysis of whether the repairs would constitute a gift of public funds is not affected by article VIII, section 10 of the state constitution. Section 10 contains an exception to the state constitution's prohibition on gifts of public funds. It states:
 Notwithstanding the provisions of section 7 of this Article, any county, city, town, quasi municipal corporation, municipal corporation, or political subdivision of the state which is engaged in the sale or distribution of water, energy, or stormwater or sewer services may, as authorized by the legislature, use public moneys or credit derived from operating revenues from the sale of water, energy, or stormwater or sewer services to assist the owners of structures or equipment in financing the acquisition and installation of materials and equipment for the conservation or more efficient use of water, energy, or stormwater or sewer services in *Page 4 
such structures or equipment. Except as provided in section 7 of this Article, an appropriate charge back shall be made for such extension of public moneys or credit and the same shall be a lien against the structure benefited or a security interest in the equipment benefited. Any financing for energy conservation authorized by this article shall only be used for conservation purposes in existing structures and shall not be used for any purpose which results in a conversion from one energy source to another.
[original page 5] In Taxpayers of Tacoma, the Washington Supreme Court examined a prior version of section 10. Const. art. VIII, § 10 (as originally adopted as Amendment 70 (1979)). Like the current version of section 10, it permitted loans of public money to help property owners acquire equipment for energy conservation, but it did not include sewer systems or sewer equipment. The Court found that section 10 was proposed by the Legislature, and ratified by the people, for "the limited purpose of carving out an exception to the lending of credit prohibition" in the state constitution. Taxpayers of Tacoma, 108 Wn.2d at 688. The Court held that the question of whether Tacoma couldpurchase conservation measures from private parties was a question "totally separate from, and uninfluenced by" the exception in article VIII, section 10 for the provision of loans to private parties for conservation measures.
In 1997, section 10 was amended to add municipal sewer services and sewer equipment. Const. amend. 91 (H.J.R. 4209 (1997)). The legislative history of amendment 91 indicates that the Legislature's intent was to permit lending of public credit to finance sewer improvements, not to address the use of public funds for the purchase of improvements. H.B. Rep. on H.J.R. 4209, 55th Leg. (1997). The voters pamphlet reflects the same intent. The ballot title submitted to the voters asked: "Shall the Constitution be amended to permit local governments to make loans for the conservation or the more efficient use of stormwater or sewer services?" Voters Pamphlet for State General Election 18 (1997). As with the original enactment of section 10, there is no indication that amendment 91 was intended to create a negative implication that the purchase of conservation equipment would be prohibited. Accordingly, the amendment does not affect a municipal sewer district's authority to use public funds to repair or replace side sewers.
We trust that the foregoing will be useful to you.
ROB McKENNA Attorney General
ANNE EGELER Deputy Solicitor General
[1] Treatment plants may or may not be owned and operated by the municipal sewer system. They may be operated by other governmental entities.