[No. 71934-9. En Banc.]

Argued November 13, 2002. Decided January 30, 2003.

WASHINGTON PUBLIC PORTS ASSOCIATION, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

638

640

*George C. Mastrodonato* and *Michael B. King* (of *Lane Powell Spears Lubersky, L.L.P.*) and *Robert F. Hauth* (of *Owens Davies, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *David M. Hankins, Assistant*, for respondent.

*Thomas H. Tanaka* on behalf of Port of Seattle, amicus curiae.

*Dennis J. Dunphy* on behalf of Port of Vancouver, Washington, amicus curiae.

BRIDGE, J. — The Washington Public Ports Association (WPPA) has appealed a trial court ruling denying its petition for a declaratory judgment invalidating the leasehold excise tax (LET) provisions of WAC 458-29A-500 (Rule 500). WPPA argues that the Department of Revenue (DOR) exceeded its statutory authority under RCW 82.29A.050 by holding public port districts liable in certain situations for unpaid or uncollected LET under Rule 500. WPPA also claims that Rule 500 violates state constitutional prohibitions against the taxation of publicly owned lands and the lending of government money or credit to private individuals. We disagree.

# I

WPPA is a trade association consisting of 69 public port districts in Washington State.[1] Although WPPA is a non-profit corporation, the public port districts are municipal corporations.[2] Public port districts often lease publicly owned facilities and real property within their boundaries to private individuals and businesses. The private lessees of publicly owned property are subject to a LET, and as required by chapter 82.29A RCW, public port districts regularly collect the LET from their private lessees and remit the same to DOR. In the process of collecting and remitting the excise tax to DOR, public lessors are held, per statute, fully liable.[3] To regulate the collection of the LET, DOR promulgated a series of rules including Rule 500. This rule provides that DOR may hold the public lessor responsible for payment of the LET in cases where the lessor fails to notify DOR in writing of a private lessee's nonpayment of rent and/or taxes, or in cases where the public lessor collects the LET, but fails to remit the same to DOR.[4]

In January 2001, the ports of Olympia and Port Angeles[5] and WPPA filed a petition for declaratory relief and request for refund of assessed LET with Thurston County Superior Court. The ports and WPPA claimed that under RCW 82.29A.050, public port districts should be held liable only

---

[1] Clerk's Papers (CP) at 5.

[2] *See* RCW 53.04.060 ("if . . . a majority of the voters . . . vote in favor of the formation of the district, . . . the port district shall then be and become a municipal corporation of the state of Washington").

[3] *See* RCW 82.29A.050(2).

[4] WAC 458-29A-500(2).

[5] DOR conducted an audit of the Port of Olympia from January 1, 1994 through September 30, 1997, and assessed it for uncollected LET in the amount of $13,266. CP at 63. The Port of Olympia then appeared before DOR's Appeals Division on January 25, 2000 to challenge DOR's audit and for holding the Port of Olympia responsible for uncollected LET. *Id.* The Appeals Division found for DOR. *Id.* at 35. After the Appeals Division's determination was issued, the Port of Olympia, along with the Port of Port Angeles (contesting liability of LET in the amount of $4,140) and WPPA sought declaratory judgment with the Thurston County Superior Court. *Id.* at 103.

when the LET is collected but not remitted to DOR. They argued that the law makes only the private lessee liable for unpaid or uncollected LET, and nothing in chapter 82.29A RCW justifies a rule imposing personal liability upon the public lessor. The ports and WPPA also asserted that Rule 500's imposition of excise tax liability on public lessors effected an unconstitutional tax on the property of municipal corporations, which is in violation of article VII, section 1 of the Washington State Constitution. Finally, WPPA claimed that Rule 500 violates article VIII, sections 5 and 7, since it forces public lessors to make unconstitutional loans or gifts of public money to private individuals and businesses.

The trial court denied the ports and WPPA's petition for declaratory judgment and request for tax refund. The trial court held that RCW 82.29A.050 was clear and unambiguous, and DOR had the discretion to impose tax liability on public lessors who fail to collect and remit LET from their private lessees. The trial court also held that the promulgation of Rule 500 did not exceed DOR's statutory authority, that the rule was not arbitrary and capricious, and that Rule 500 was constitutional.

WPPA alone[6] petitioned this court for direct review challenging the trial court's interpretation of the LET statute and Rule 500. We accepted direct review because this case raises fundamental and urgent issues of broad public import requiring prompt and ultimate determination. *See* RAP 4.2(a)(4).

## II

### *Overview of RCW 82.29A.050 and WAC 458-29A-500*

A LET is imposed on private parties or individuals for "the act or privilege of occupying or using publicly owned real or personal property through a leasehold interest" at a

---

[6] The Port of Port Angeles dismissed on a voluntary nonsuit before the matter went to trial. CP at 238. The Port of Olympia did not appeal the Thurston County Superior Court's order denying its tax refund claim. Appellant's Opening Br. at 8.

rate of 12 percent of taxable rent. RCW 82.29A.030(1).[7] Chapter 82.29A RCW defines "leasehold interest" as

> an interest in publicly owned real or personal property which exists by virtue of any lease, permit, license, or any other agreement, written or verbal, between the public owner of the property and a person who would not be exempt from property taxes if that person owned the property in fee, granting possession and use, to a degree less than fee simple ownership . . . .

RCW 82.29A.020(1). Under article VII, section 1 of our state constitution, publicly owned real or personal property is exempt from taxation. By leasing publicly owned property, private lessees receive significant benefits in the form of services by the government. RCW 82.29A.010(1)(a). Therefore, the LET is intended "to fairly compensate governmental units for services rendered to such lessees of publicly owned property." RCW 82.29A.010(1)(c). The LET is measured by the private lessee's "taxable rent," which is defined as

> contract rent . . . where the lease or agreement has been established or renegotiated through competitive bidding, or negotiated or renegotiated in accordance with statutory requirements regarding the rent payable, or negotiated or renegotiated under circumstances, established by public record, clearly showing that the contract rent was the maximum attainable by the lessor . . . .

RCW 82.29A.020(2).[8]

Under RCW 82.29A.050, the LET is paid by the lessee to the lessor, and the "lessor shall collect such tax and remit the same" to DOR. RCW 82.29A.050(1). Upon receiving the LET from the private lessee, the public lessor must remit it to DOR "on or before the last day of the month following the

---

[7] The LET is generally imposed by the State. However, under RCW 82.29A.040, local governments are authorized to impose their own LET. If local LET is collected, a credit will be given to offset the state imposed tax. *See* RCW 82.29A.030(1).

[8] RCW 82.29A.020(2)(a) also defines "contract rent" as the amount of consideration due as payment for a leasehold interest.

month in which the tax is collected." RCW 82.29A.050(2). Further, "[t]he lessor *shall* be fully liable for collection *and* remittance of the tax." *Id.* (emphasis added).

Upon enactment of the LET statutes in 1976,[9] the legislature authorized DOR to make rules and regulations consistent with the Administrative Procedure Act (APA), chapter 34.05 RCW, that are "necessary to permit its effective administration including procedures for collection and remittance of taxes." RCW 82.29A.140. However, DOR did not promulgate any LET rules until 1999 when Rule 500 took effect. *See* WAC 458-29A-500 (effective Nov. 1, 1999). Rule 500 states in relevant part:

(2) **Lessor's responsibility to collect and remit tax.** The public lessor is responsible for collecting and remitting the leasehold excise tax from its private lessees. *If the public lessor collects the leasehold excise tax but fails to remit it to the department, the public lessor is liable for the tax.*

(a) Where the public lessor has attempted to collect the tax, but has received neither contract rent nor leasehold excise tax from the lessee, *the department will proceed directly against the lessee for payment of the tax and the lessee shall be solely liable for the tax, provided, the lessor notifies the department in writing when the lessor is unable to collect rent and/or taxes,* and the amount of the leasehold excise tax arrearage is $1000 or greater. *If the lessor fails to notify the department, the department may, in its discretion, look to the public lessor for payment of the tax.*

(b) If, upon examining all of the facts and circumstances, the department determines that the public lessor in good faith believed the lessee to be exempt from all or part of the leasehold excise tax, the department will look to the public lessor for assistance in collection of the tax due, but will not hold the public lessor personally liable for payment of such tax. To satisfy the requirement of "good faith" the public lessor must have acted with reasonable diligence and prudence to determine whether the leasehold excise tax was due from the lessee.

---

[9] LAWS OF 1975-76, 2d Ex. Sess., ch. 61, § 16.

WAC 458-29A-500 (emphasis added).

WPPA and DOR have conflicting interpretations of the LET statute and Rule 500. WPPA's interpretation would place liability on the public lessor if it collects, but fails to remit the LET to DOR, or if the public lessor fails to make a good faith effort to collect the LET. Whereas, DOR's interpretation places total liability on public lessors for the collection *and* remittance of the LET. We are in agreement with DOR.

## III

### *Standard of Review*

■ The standard of review we utilize in an agency rule challenge is governed by the APA. The burden of demonstrating the invalidity of an agency rule is on the party asserting the invalidity—in this case, WPPA. *See* RCW 34.05.570(1)(a). This court may declare an agency rule invalid if it: (1) violates constitutional provisions, (2) exceeds statutory authority of the agency, (3) was adopted without compliance to statutory rule-making procedures, or (4) is arbitrary and capricious. RCW 34.05.570(2)(c). WPPA asserts that Rule 500 is invalid because DOR exceeded its statutory authority in promulgating the rule. Determining the extent of DOR's rule-making authority is a question of law. *Local 2916, IAFF v. Pub. Employment Relations Comm'n*, 128 Wn.2d 375, 379, 907 P.2d 1204 (1995).

■ The construction and meaning of a statute is also a question of law, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. *Id.* at 9-10. The "plain meaning" rule includes not only the ordinary meaning of the words, but the underlying legislative purposes and closely related statutes to determine the proper meaning of the statute. *Id.* at 11. If, after the plain meaning analysis, the statute still

remains susceptible to more than one reasonable meaning, we consider it ambiguous and it is appropriate to resort to aids of construction. *Id.* at 12.

### *DOR's Statutory Authority to Promulgate Rule 500*

■ DOR possesses only those powers either expressly granted or necessarily implied from statutory grants of authority. *Green River Cmty. Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980). Administrative agencies do not have the power to promulgate rules that would amend or change legislative enactment. *Id.* Agency rules may be used to " ' "fill in the gaps" ' " in legislation if such rules are " 'necessary to the effectuation of a general statutory scheme.' " *Id.* (quoting *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975)). We presume that administrative rules adopted pursuant to a legislative grant of authority are valid, and we will uphold such rules if they are reasonably consistent with the controlling statute. *Green River Cmty. Coll.*, 95 Wn.2d at 112. Because WPPA claims that Rule 500 is invalid, it has the burden of showing compelling reasons why Rule 500 is in conflict with the intent and purpose of the LET statute. *Id.*

WPPA asserts that RCW 82.29A.050 is not a tax incidence statute, but rather is a procedural statute that pertains only to the collection of the LET. Appellant's Opening Br. at 18. WPPA concedes that this statute places liability on the public lessor, but claims its liability is limited. WPPA asserts that liability may attach only if the public lessor fails to make a good faith effort to collect the tax or if the public lessor collected the tax but failed to remit the same to DOR. Because of this narrow reading of the statute, WPPA claims that Rule 500 exceeds the scope of statutory procedural obligations "since it presumes to give the DOR unfettered discretion to collect the tax from a lessor, even if the lessor has made every reasonable effort to collect the tax." Opening Br. at 19.

The language in RCW 82.29A.050 is clear: public lessors shall be *fully liable* for the collection *and* remittance of the LET. There is no language in RCW 82.29A.050 that supports WPPA's claim that public lessors are liable for failure to make a good faith effort only to collect the tax, or if LET is collected, failure to remit the same to DOR. None of these proffered provisos are found in the language of RCW 82.29A.050.

The legislature gave DOR wide discretionary power to hold public lessors accountable for uncollected LET. RCW 82.29A.050(2) states in relevant part: "Where a lessee has failed to pay to the lessor the tax imposed by this chapter and the lessor has not paid the amount of the tax to the department, the department *may, in its discretion,* proceed directly against the lessee for collection of the tax . . . ." (Emphasis added.) This language clearly demonstrates that the public lessor is held liable for uncollected LET, but if DOR wishes to, it may seek the uncollected LET from the lessee. The statutory language explicitly signifies that DOR will generally look to the public lessor for the LET, but will also have the discretion to directly seek the LET from the lessee.

*Black's Law Dictionary* defines "full" (root word of "fully") as "complete, entire, and detailed." BLACK'S LAW DICTIONARY 604 (5th ed. 1979). "Fully" is defined by *Webster's Dictionary* as "COMPLETELY, ENTIRELY, THOROUGHLY." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 919 (1993). *Black's* also defines "liable" as "[b]ound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation, or restitution." BLACK'S, *supra*, at 824. Therefore, under the common meaning of the terms "fully" and "liable," we find that the public lessor is entirely, i.e., fully, responsible for the collection and the remittance of the LET—even if the LET is uncollected.

In *Campbell & Gwinn*, we held that determining a statute's plain meaning includes examining closely related statutes. 146 Wn.2d at 11-12. Thus, we examine the retail sales tax, like the LET, a "pass through tax," to further

clarify the plain meaning of the LET. The retail sales tax statute is found in RCW 82.08.050, and states that although the tax is imposed on the buyer, the seller is personally liable for collecting the tax and paying the same to DOR. The statute states in relevant part:

> The tax hereby imposed shall be paid by the buyer to the seller, and each seller shall collect from the buyer the full amount of the tax payable . . . .
>
> In case any seller fails to collect the tax herein imposed or having collected the tax, fails to pay it to the department in the manner prescribed by this chapter, whether such failure is the result of his or her own acts or the result of acts or conditions beyond his or her control, he or she shall, nevertheless, be *personally liable* to the state for the amount of the tax . . . .

RCW 82.08.050 (emphasis added). Similar to the LET statute, the retail sales tax statute provides that DOR may pursue the buyer or consumer if he/she fails to pay the tax, and the underlying obligation or debt to pay the tax ultimately resides with the buyer:

> The amount of tax, until paid by the buyer to the seller or to the department, shall constitute a debt from the buyer to the seller . . . .
>
> Where a buyer has failed to pay to the seller the tax imposed by this chapter and the seller has not paid the amount of the tax to the department, the department may, *in its discretion*, proceed directly against the buyer for collection of the tax . . . .

RCW 82.08.050 (emphasis added). As with the LET, the legislature would not have provided DOR with the discretion to proceed against the buyer, unless the seller had the obligation to pay the retail sales tax.

WPPA argues that if the legislature had intended for the public lessor to be held liable for the unpaid or uncollected LET, it would have used language identical to the retail sales tax statute that places "personal liability" on sellers for uncollected sales tax instead of characterizing the public lessor as being "fully liable" for the LET. However, when comparing the LET statute with the retail sales tax statute,

the terms "fully liable" and "personally liable" have no significant legal difference. The language in both statutes essentially conveys the same principle. It is the responsibility of the public lessor or the seller to collect the necessary taxes from the lessee or the buyer. Further, under both statutes, the public lessor and the seller are each responsible for sending or transferring the necessary taxes to DOR.[10]

RCW 82.29A.050 is clear and unambiguous in that it holds the public lessor completely liable for the collection and the remittance of the LET (including any that is uncollected or unpaid). Per RCW 82.29A.140, the promulgation of Rule 500 is statutorily authorized, and it is reasonably consistent with RCW 82.29A.050. WPPA's arguments to the contrary are unpersuasive.

*Const. art. VII, § 1—Prohibiting Imposition of Property Tax on Publicly Owned Facilities*

WPPA claims that Rule 500 violates Const. art. VII, § 1, which states in relevant part: "Property of the United States and of the state, counties, school districts and other municipal corporations, . . . shall be exempt from taxation." WPPA argues that if the public lessor is held fully liable for the collection and remittance of the LET, the LET would in effect, become an unconstitutional property tax on the public lessor's property. For support of its position, WPPA relies on *Apartment Operators Ass'n of Seattle v. Schumacher*, 56 Wn.2d 46, 351 P.2d 124 (1960) and *Harbour Village Apartments v. City of Mukilteo*, 139 Wn.2d 604, 989 P.2d 542 (1999). These two cases, however, are distinguishable from the case at bar.

---

[10] The LET statute uses the word "remit," whereas the retail sales tax statute uses the word "payment." These two terms have identical meanings. The *Webster's Dictionary* definition of "payment" is the "act of paying or giving compensation." WEBSTER'S, *supra*, at 1659. "Remit" is defined as "to send (money) to a person or place (as in payment of a demand, account, draft)." *Id.* at 1920. Because the definitions of "payment" and "remit" are essentially identical, the roles of the public lessor and the seller in transferring the necessary taxes to DOR are the same.

In *Schumacher*, the state tax commission[11] was collecting tax on rents that exceeded $300 per month. 56 Wn.2d at 46. This court held that such a tax constitutes a property tax, and not an excise tax. *Id.* at 47. "[A] tax on rental income is a tax on property, and not an excise tax" because income is considered property. *Id.* For support of its holding, the *Schumacher* court relied on a string of previously decided cases, all of which involved situations in which property owners were being *directly* taxed by the state tax commission.[12] Although the commission tried to pass the various taxes off as excise taxes, this court found that in each case the taxes were property taxes imposed directly on the complainants.

*Schumacher* is not controlling. Here, the public ports are not being directly taxed on rental income by DOR. The LET is imposed on the private lessee for the use and occupancy of public property, and the amount is determined by the contract rent. The public ports are essentially intermediaries between DOR and the private lessee for the collection and remittance of the LET. Thus, the LET cannot be considered a property tax that is directly imposed on the ports.

" '[T]he character of a tax is determined by its incidents, not by its name.' " *Harbour Vill.*, 139 Wn.2d at 607 (quoting *Jensen v. Henneford*, 185 Wash. 209, 217, 53 P.2d 607 (1936)). In *Harbour Village*, the issue was whether a residential dwelling unit fee charged by the city to the owner of apartments was an excise tax or a property tax. 139 Wn.2d at 605. The fee was a flat fee based on each rental unit and was due regardless of whether the unit was being rented out. *Id.* at 606. The residential dwelling unit

---

[11] The state tax commission was replaced by DOR. *See* RCWA 11.08.160 **Historical and Statutory Notes**, "**Construction—Laws of 1975, 1st Ex. Sess., ch. 278**," at 65 (West 1998).

[12] The *Schumacher* court based its holding on the following cases, all of which recognized that a tax on rental income is a tax on property: *Jensen v. Henneford*, 185 Wash. 209, 53 P.2d 607 (1936); *Power, Inc. v. Huntley*, 39 Wn.2d 191, 235 P.2d 173 (1951); *Aberdeen Sav. & Loan Ass'n v. Chase*, 157 Wash. 351, 289 P. 536 (1930); *Culliton v. Chase*, 174 Wash. 363, 25 P.2d 81 (1933).

fee was not measured by the value of the property or the amount of rent collected, but was simply an annual flat fee on each unit rented or offered for rent. *Id.* Thus, this court found that the incidence of the tax was "the mere ownership of that subclass of real property defined by [the] rental use." *Id.* at 607. In fact, we distinguished a LET tax from the tax imposed on the *Harbour Village* apartment owners. *See id.* at 608.

The circumstance of the LET being charged to the ports in this case is like the tax levied in *Black v. State*, 67 Wn.2d 97, 406 P.2d 761 (1965), which was determined to be an excise tax. In *Black*, one company leased to another a floating hotel for the Seattle World's Fair. *Id.* at 98. The cost of the lease was $425,000, and the State Tax Commission assessed a retail sales tax of $17,000 to the lessor. *Id.* This court held in *Black* that such a tax was actually an excise tax on the transaction of leasing tangible personal property. *Id.* at 99. Comparing its case to *Black*, the *Harbour Village* court stated:

> Black was subjected to a $17,000 sales tax on a $425,000 ship lease payment because it was "an excise tax on the transaction of leasing tangible personal property. It is not a tax on property." But here it is not the rental transaction which is taxed—indeed there need not even be a rental transaction—rather it is the fact of ownership of rental *property* which is taxed.

*Harbour Vill.*, 139 Wn.2d at 608 (quoting *Black*, 67 Wn.2d at 99). Similar to the sales tax at issue in *Black*, under the LET, there must be a rental transaction. In other words, there needs to be an occupancy or use of publicly owned real or personal property through a leasehold interest before the tax is due.

In *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995), we provided a clear distinction between a "property tax" and an "excise tax." An excise tax is defined as:

> "[An] obligation . . . based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or

engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand, as in the case of a property tax, is lacking."

127 Wn.2d at 889 (quoting *High Tide Seafoods v. State*, 106 Wn.2d 695, 699, 725 P.2d 411 (1986)). Analyzing the LET under the *Covell* definition, the LET is indeed an excise tax. The LET is based on the voluntary action of the person taxed (the private lessee or the public lessor where the public lessor has failed to collect and remit the tax) in performing the act which is the subject of the tax (occupying and using public property). The public lessor is liable for the amount of the LET only when it permits a private lessee to occupy and use its property by way of a lease, and fails to collect the tax from the private lessee and remit the same to DOR. Because we find that the LET is a true excise tax, holding the public lessor fully liable for the collection and remittance of the excise tax is not unconstitutional under article VII, section 1 of our state constitution.

*Const. art. VIII, § 7—Prohibiting Lending or Giving of Public Money or Credit*

 WPPA also argues that Rule 500 violates article VIII, sections 5 and 7 because it "permits or requires a public lessor . . . to pay the lessee's unpaid leasehold tax," which results in lending or giving of public money or credit. Appellant's Opening Br. at 43. Article VIII, section 7 states:

> No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

CONST. art. VIII, § 7.[13]

---

[13] Although it has been held that sections 5 and 7 are identical in intent, only article VIII, section 7 applies to this case because section 5 governs the lending of money or credit by the *State*, not municipalities.

In *Japan Line, Ltd. v. McCaffree*, we rejected a challenge to the LET based upon the violation of article VIII, sections 5 and 7. 88 Wn.2d 93, 99, 558 P.2d 211 (1977). We held that "[t]he manifest purpose of these provisions [sections 5 and 7] in the constitution is to prevent state funds from being used to benefit private interests where the public interest is not primarily served." *Id.* at 98. We have also held that these constitutional provisions do not apply or render the actions unconstitutional if the funds are expended to carry out governmental purposes. *City of Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 702, 743 P.2d 793 (1987). An expenditure is "for a public purpose when it confers a benefit of reasonably general character to a significant part of the public." *In re Marriage of Johnson*, 96 Wn.2d 255, 258, 634 P.2d 877 (1981).

The LET statute requires that public lessors collect the LET to fairly compensate the public for use of publicly owned property by private lessees. This is essentially the governmental purpose that is being achieved by placing liability on the public lessors. Under the plain meaning of the LET statute, the ultimate obligation for the LET remains with the lessee: "The lessor shall be fully liable for collection and remittance of the tax. *The amount of tax until paid by the lessee to the lessor shall constitute a debt from the lessee to the lessor.*" RCW 82.29A.050(2) (emphasis added). Therefore, the obligation of the lessee is never absolved. Even though the public lessor may be held liable for the LET for failing to collect or remit the LET to DOR, the lessor may recoup its loss from the lessee. Therefore, we hold that Rule 500, which dictates how a public lessor is to carry out governmental purposes, is not in violation of article VIII, section 7 of the Washington State Constitution.

## IV

After examining its plain meaning and comparing it to a similar statute, we find that RCW 82.29A.050 is clear and unambiguous. The LET statute holds public lessors fully liable for the collection *and* remittance of the LET to DOR.

654

We hold that the promulgation of Rule 500 did not exceed DOR's statutory authority. Rule 500, acting in comport with the LET statutes, does not violate article VII, section 1 or article VIII, section 7.

We affirm the trial court.

ALEXANDER, C.J.; JOHNSON, MADSEN, SANDERS, IRELAND, CHAMBERS, and OWENS, JJ.; and SMITH, J. PRO TEM., concur.