# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRUNDAGE-BONE CONCRETE PUMPING, INC., | No. 58528-6-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | |
| Respondent. | |

MAXA, P.J. – Brundage-Bone Concrete Pumping, Inc. (Brundage-Bone) appeals the trial court's order denying its challenge to a Department of Revenue (DOR) rule, WAC 458-20-211 (Rule 211). Brundage-Bone provides concrete pumping services to contractors for use in construction projects, supplying a concrete pumping truck with an operator to control the pump. Rule 211 states that stand-alone concrete pumping services will be taxed as retail sales rather than as wholesale sales.

RCW 82.04.050(9) states that the term "retail sale" includes "the charge made for providing tangible personal property along with an operator for a fixed or indeterminate period of time." However, RCW 82.04.050(14) states that the term retail sale "does not include the *sale for resale of any service* described in this section if the sale would otherwise constitute a 'sale at retail' and 'retail sale' under this section." (Emphasis added.) And RCW 82.04.060(3) states

that a "wholesale sale" includes "[t]he sale of any service for resale, if the sale is excluded from the definition of 'sale at retail' and 'retail sale' in RCW 82.04.050(14)."

Rule 211(5)(a) states that providing equipment with an operator to a building contractor generally is classified as a retail sale for B&O tax purposes. Rule 211(6)(a) states that retail sales tax applies to providing tangible personal property with an operator. However, WAC 458-20-170 (Rule 170) states that a person who leases equipment to a prime contractor and also operates the equipment is a subcontractor taxable under the wholesaling classification. Rule 170(1)(b), 3(a).

Before 2019, DOR's website had a section providing industry guidance regarding the tax treatment of concrete pumping services. The guidance stated that concrete pumping services for another contractor was a wholesaling activity subject to B&O tax under the wholesale classification and not subject to sales tax.

But in August 2019, DOR issued an interim guidance statement to clarify the tax treatment of certain concrete pumping services. DOR explained that the rental of concrete pumping equipment with an operator was subject to the retailing B&O tax and retail sales tax. DOR subsequently incorporated the interim guidance statement into amendments to Rule 211 that were adopted in March 2021.

Brundage-Bone argues that Rule 211 is invalid because (1) the rule exceeds DOR's statutory authority by excluding stand-alone concrete pumping services from the definition of a sale for resale, (2) the rule exceeds DOR's statutory authority to the extent that it conflicts with the provisions of Rule 170, and (3) DOR adoption of the 2021 amendments was arbitrary and capricious.

We hold that (1) because DOR's interpretation of RCW 82.04.050(9), RCW 82.04.050(14), and RCW 82.04.060(3) in Rule 211 is reasonably consistent with those statutes, DOR did not exceed its statutory authority by adopting Rule 211; (2) Rule 211 does not exceed statutory authority simply because it conflicts with Rule 170; and (3) DOR's 2021 amendments to Rule 211 were not arbitrary and capricious because DOR duly considered the relevant facts and circumstances when it adopted the amendments. Accordingly, we affirm the trial court's order denying Brundage-Bone's challenge to Rule 211.

## FACTS

*Stand-Alone Concrete Pumping Services*

Brundage-Bone is a business that provides concrete pumping services to residential, commercial, and industrial park customers. Their customers include both prime contractors and subcontractors.

When hired to provide concrete pumping services, Brundage-Bone delivers a concrete pumping truck to the jobsite with an operator. The contractor purchases concrete from another vendor, who pours the concrete into the pumping truck's hopper. Concrete pumping trucks have powerful pumps with an extendable hose. The operator controls the pump to discharge concrete as instructed by the contractor. The contractor provides the workers responsible for placing and finishing the pumped concrete.

*Statutory Change and 1996 Amendments to Rule 211*

RCW 82.04.050 defines what transactions are classified as "retail sales" for tax purposes. A retail sale generally is defined as "every sale of tangible personal property . . . to all persons irrespective of the nature of their business." RCW 82.04.050(1)(a).

In 1993, the legislature amended RCW 82.04.050 to include in the definition of retail sale "the rental of equipment with an operator." Former RCW 82.04.050(4) (1993).[1] In 1996, DOR incorporated that statutory change into its Rule 211. *See* Former WAC 458-20-211 (1996) (former Rule 211). Provisions of the amended Rule 211 stated that renting equipment with an operator generally is a retail sale, former Rule 211(5)(b), and the lessee is not purchasing the equipment for resale. Former Rule 211(4). And the 1996 amendments included an example specific to concrete pumping:

> XYZ Concrete Pumping is hired by a prime contractor to supply a concrete pump and operator to pump concrete from a premix concrete delivery truck to the location of the forms. XYZ has no responsibility to build forms, do the concrete finishing, or otherwise see that the concrete meets or is placed according to contract specifications. In short, the pump functions similarly to a wheelbarrow, but in a more efficient manner. XYZ is not a subcontractor and is making a retail rental of equipment with an operator.

Former Rule 211(8)(c).

*DOR Industry Guidance and Interim Guidance Statement*

For some time before 2019, DOR's website listed industry guidance for how certain activities are classified for tax purposes. The guidance included a section specifically related to concrete pumping services:

> Concrete pumping services are considered to be construction services. As such, concrete pumping for a landowner is a retail sale and subject to sales tax. Income received from this activity is subject to B&O tax under the Retailing classification. *Concrete pumping services for another contractor is a wholesaling activity*, if a reseller permit is obtained from the hiring contractor. Such charges are not subject to sales tax and income from this activity is subject to B&O tax under the Wholesaling classification.

---

[1] This provision subsequently was expanded and renumbered, and currently is codified at RCW 82.04.050(9). The current version states, "The term [retail sale] also includes the charge made for providing tangible personal property along with an operator for a fixed or indeterminate period of time." RCW 82.04.050(9).

Clerk's Papers (CP) at 66 (emphasis added).  Classifying concrete pumping services as construction services meant that concrete pumping companies could treat their transactions as wholesale sales when they sold their services to other contractors.

In August 2019, DOR issued an interim guidance statement regarding the tax treatment of concrete pumping service providers.  The interim guidance stated,

> This section applies to taxpayers who provide stand-alone concrete pumping services. . . .
>
> A "retail sale" includes the charges made for providing tangible personal property along with an operator for a fixed or indeterminate period of time.  RCW 82.04.050(9).  Accordingly, consistent with the example in Rule 211(8)(c), the rental of concrete pumping equipment with an operator (i.e., the concrete pumping service) is subject to retailing B&O and retail sales tax.
>
> Customers, including construction contractors or subcontractors, who rent concrete pumping equipment with an operator are considered consumers of such retail sales and cannot use a reseller permit.

Admin. Rec. (AR) at 2.

DOR further explained that when a concrete pumping service provider sells construction materials or other construction services in addition to the rental of concrete pumping equipment with an operator, providers must look to the primary purpose of the sale to determine its tax treatment.  When the primary purpose of the sale is providing the concrete materials, then the sale is subject to retailing B&O taxes unless it qualifies as a purchase for resale.  However, if the primary purpose of the sale is the provision of construction services, then it may qualify as a purchase for resale under certain circumstances.

*DOR Initiates Rulemaking Process to Update Rule 211*

In September 2019, DOR filed a prepropos al statement of inquiry to incorporate its interim guidance statement regarding the tax treatment of concrete pumping services into Rule 211.  In October, DOR held a public meeting about the proposed rulemaking.  It did not provide

draft amendments to Rule 211 at this meeting. Representatives of concrete pump operators and industry groups attended the meeting and provided comments. At the meeting, DOR explained that there was conflicting guidance on the treatment of concrete pumping services on their website, but that it since had been taken down.

After the meeting, eight stakeholders provided written comments on DOR's proposed amendments to Rule 211. One person expressed support for the proposed amendments to the rule. The seven other stakeholders who provided comments after the October meeting expressed opposition to the proposed changes. Many expressed concerns that the proposed amendment was unfair, because it would treat companies that only provide stand-alone concrete pumping services differently from companies that provide both concrete pumping and other materials or services. One stakeholder argued that DOR lacked legal authority to issue its interim guidance.

Based on the comments received at the meeting, DOR extended the effective date of the interim guidance statement to April 1, 2020, to give time to affected parties to comply.

*Legislation Regarding Concrete Pumping Services*

In January 2020, both the House of Representatives and the Senate considered bills that would have stated that the terms "constructing," "building," "repairing," "decorating," and "improving" when used in the context of services rendered with respect to real property were deemed to include the provision of "concrete pumping services." CP at 125-26. Both bills died in committee.

*DOR Finalizes Amendments to Rule 211*

In May 2020, DOR released a second preproposal statement of inquiry. It held a second public meeting in June. DOR did not provide a draft of the amendments at this meeting.

In November, DOR released a third preproposal statement of inquiry. DOR also announced a third public meeting, and presented a draft of the proposed amendments to Rule 211. The draft rule made relatively minor changes to several sections of Rule 211 and also included a number of examples to illustrate the tax treatment under various scenarios.

On December 2, DOR held a third public meeting. At the meeting, a representative from DOR stated:

> The Department's goal is to address the issue of distinguishing concrete pumping services, classified as rentals of equipment with an operator, from sales of construction services or sales of construction materials, particularly in cases where multiple goods or services are provided for a single charge; thus, the Department is proposing the inclusion of additional examples in the rule to illustrate sales transactions that involve the provision of a concrete pumping apparatus with an operator.

AR at 238.

On December 16, DOR filed a notice of proposed rulemaking for its updates to Rule 211.

DOR held its fourth and final public meeting in February 2021. DOR issued an explanatory statement in which it summarized and addressed the comments it had received.

In March, DOR adopted permanent amendments to Rule 211. In a memorandum to the agency head, DOR stated that "[w]e responded to comments as necessary, however, we did not make any changes to the proposed rule amendments based on the comments received." AR at 44.

The primary changes in the 2021 amendments were the inclusion of multiple, more extensive examples. Like the 1996 amendments, the 2021 amendments included an example regarding stand-alone concrete pumping services:

> Example 9. DEF Builders Co. (prime contractor) is hired to construct an apartment complex. DEF is performing a significant portion of the construction services associated with the project on its own behalf, including construction of the building's foundation. After constructing forms for the apartment's foundation,

> DEF contracts with XYZ Concrete Co. to pump premixed concrete from a ready mix truck (located at the construction site) into the forms. XYZ operates its own pumping equipment, however, DEF controls the flow and placement of the concrete, directing XYZ's operator to start and stop the pump. The premixed concrete is not provided by XYZ. DEF is responsible for finishing the concrete.
>
> *In this scenario, XYZ is providing stand-alone concrete pumping services, and its business activity is classified as a rental of equipment with an operator, the charges for which are subject to retailing B&O and retail sales tax.* Additionally, XYZ's activity is not eligible for resale, as DEF is considered the consumer of the operated rental equipment.

Rule 211(8) (emphasis added).

*Trial Court Ruling*

In September 2021, Brundage-Bone filed a petition for declaratory judgment in the trial court. Brundage-Bone argued that (1) Rule 211 was invalid because DOR exceeded its statutory authority by excluding stand-alone concrete pumping services from "sale[s] for resale of any service" under RCW 82.04.050(14), (2) Rule 211 was invalid because it includes definitions that conflicted with Rule 170, and (3) the 2021 amendments to Rule 211 were arbitrary and capricious because they treated concrete pumping services subcontractors differently from other subcontracted services. CP at 5.

DOR argued that its amendments to Rule 211 were consistent with RCW 82.04.050(9), which provides that a retail sale includes a charge made "for providing tangible personal property along with an operator for a fixed or indeterminate period of time."

DOR explained that it first issued Rule 211 in 1970, and they have amended the rule several times to incorporate statutory changes. Therefore, after the legislature enacted RCW 82.04.050(9), which amended the definition of "retail sale" to include "the rental of equipment with an operator," DOR accordingly amended Rule 211 to reflect that change in 1996.

DOR incorporated the interim guidance statement into Rule 211 to "provide additional guidance distinguishing (1) stand-alone concrete pumping services classified as rental of equipment with an operator under RCW 82.04.050(9), from (2) sales of construction materials and sales of construction services classified as wholesale sales." CP at 98.

In February 2023, the trial court entered an order denying Brundage-Bone's challenge to Rule 211. Specifically, the court ruled that Brundage-Bone did not meet its burden to prove that Rule 211 exceeds DOR's statutory authority, and also failed to prove that the 2021 amendments to Rule 211 were arbitrary and capricious.

Brundage-Bone appeals the trial court's order denying the challenge to Rule 211.

ANALYSIS

A.    STANDARD OF REVIEW

Parties can petition for judicial review of an agency rule at any time. RCW 34.05.542(1). The party challenging a rule bears the burden of proving its invalidity. *Bassett v. Dep't of Ecology*, 8 Wn. App. 2d 284, 297, 438 P.3d 563 (2019). "[T]he court shall declare the rule invalid only if it finds that: The rule violates constitutional provisions; the rule exceeds the statutory authority of the agency; the rule was adopted without compliance with statutory rule-making procedures; or the rule is arbitrary and capricious." RCW 34.05.570(2)(c); *see also Nw. Pulp & Paper Ass'n v. Dep't of Ecology*, 200 Wn.2d 666, 672, 520 P.3d 985 (2022).

DOR has no authority to amend tax statutes by regulation. *Ctr. for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 967, 474 P.3d 1107 (2020). "Rules that are not consistent with or are broader than the statutes they implement are invalid." *Id.* However, administrative rules written within the framework of the applicable statutes do not exceed statutory authority. *Id.* An agency does not exceed its statutory authority as long as the rule is

" 'reasonably consistent with the controlling statute[s].' " *Id.* (quoting *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 646, 62 P.3d 462 (2003)); *see also Dep't of Revenue v. GameStop, Inc.*, 8 Wn. App. 2d 74, 82, 436 P.3d 435 (2019) ("We presume that a regulation is valid if it is reasonably consistent with the statute it implements.").

We review the validity of an agency rule de novo. *Ctr. for Env't Law & Pol'y v. Dep't of Ecology*, 196 Wn.2d 17, 28, 468 P.3d 1064 (2020).

B.      STATUTORY AND REGULATORY FRAMEWORK

1.      Relevant Statutes

Washington levies B&O taxes on companies that engage in business in the state. RCW 82.04.220(1). There is a B&O tax rate for "sales at retail," RCW 82.04.250(1), and a tax rate for "sales at wholesale." RCW 82.04.270. Sales taxes are imposed only on sales included in the RCW 82.04.050 definition of retail sale. RCW 82.08.020.

RCW 82.04.050 defines what transactions are classified as "sales at retail" or "retail sales" for tax purposes. A retail sale generally is defined as "every sale of tangible personal property . . . to all persons irrespective of the nature of their business and including, among others, without limiting the scope hereof, persons who install, repair, clean, alter, improve, construct, or decorate real or personal property of or for consumers." RCW 82.04.050(1)(a).

A "sale at retail" also includes "labor and services rendered in respect to . . . (b) The constructing, repairing, decorating, or improving of new or existing buildings or other structures under, upon, or above real property of or for consumers." RCW 82.04.050(2)(b).

RCW 82.04.051(1) states:

As used in RCW 82.04.050 . . . the term "services rendered in respect to" means, in the context of constructing, building, repairing, improving, and decorating buildings or other structures, those services that are directly related to the constructing, building, repairing, improving, and decorating of buildings or other

structures *and that are performed by a person who is responsible for the performance of the constructing, building, repairing, improving, or decorating activity.*

(Emphasis added).

Relevant here, the term "sale at retail" expressly includes "the charge made for providing tangible personal property along with an operator for a fixed or indeterminate period of time." RCW 82.04.050(9).

However, RCW 82.04.050(14) states that the term retail sale "does not include the *sale for resale of any service* described in this section if the sale would otherwise constitute a 'sale at retail' and 'retail sale' under this section." (Emphasis added.) And RCW 82.04.060(3) states that a "wholesale sale" includes "[t]he sale of any service for resale, if the sale is excluded from the definition of 'sale at retail' and 'retail sale' in RCW 82.04.050(14)."

2.    Applicable Regulations

The 1996 amendments to Rule 211 included a new introductory paragraph:

This section explains how persons are taxable who rent or lease tangible personal property or rent equipment with an operator. RCW 82.04.050(4) was amended by chapter 25, Laws of 1993 sp. sess. to specifically include the rental of equipment with an operator as a retail sale. However, as will be explained in more detail below, *some activities performed by operated equipment may be taxable under classifications other than retail sales if the operator and equipment perform activities as a prime contractor or subcontractor* and these activities are specifically classified under other tax classifications by the revenue act.

Former Rule 211(1) (emphasis added).

The amendments included two provisions that addressed supplying equipment with an operator. Former Rule 211(4) stated, "[P]ersons who rent equipment with an operator are not purchasing the equipment for resale . . . and must pay retail sales or use tax at the time the equipment is acquired." Former Rule 211(5)(b) stated, "In the case of building construction, it will be presumed that the rental of equipment with operator to a contractor is a retail sale unless

the operator has responsibility for performing construction to contract specifications and assumes

control over how the work will be performed."

In addition, the pre-1996 version of Rule 211 provided as follows, after renumbering in

the 1996 amendments: "[The] retail sales tax applies upon sales to persons who provide

[tangible personal property] with operators for a charge, without relinquishing substantial

dominion and control." Former Rule 211(6)(a).

The 1996 amendment to Rule 211 defined "subcontractor" as:

[A] person who has entered into a contract for the performance of an act with the person who has already contracted for its performance. A subcontractor is generally responsible for performing the work to contract specification and determines how the work will be performed. In purchasing subcontract services, the customer is primarily purchasing the knowledge, skills, and expertise of the contractor to perform the task; as distinguished from the operation of the equipment.

Former Rule 211(2)(c).

The 1996 amendment to Rule 211 incorporated a "true object test" to help DOR

determine the proper tax treatment for a transaction involving equipment with an operator:

The term "true object test" as it relates to this section means the analysis of a transaction involving equipment and an operator to determine if the lessee is simply purchasing the use of the equipment or purchasing the knowledge, skills, and expertise of the operator beyond those needed to operate the equipment.

Former Rule 211(2)(e).

Included in the 1996 amendments were examples to illustrate the tax treatment of

different services. A crane operator hired to supply a crane and operator to lift air conditioning

to a rooftop and hold it in place while the hiring contractor bolted the unit down was providing a

transaction taxable as a retail sale. Former Rule 211(8)(a). That is because the operator has "no

responsibility to perform actual construction to contract specification." Former Rule 211(8)(a).

In contrast, a company hired to install a neon sign and was responsible for installing electrical

12

connections and fastening the sign to the building was performing construction services, and that

transaction was treated as a wholesale sale.  Former Rule 211(8)(b).

As noted above, the 1996 amendments included an example specific to concrete

pumping:

> XYZ Concrete Pumping is hired by a prime contractor to supply a concrete pump
> and operator to pump concrete from a premix concrete delivery truck to the location
> of the forms.  XYZ has no responsibility to build forms, do the concrete finishing,
> or otherwise see that the concrete meets or is placed according to contract
> specifications.  In short, the pump functions similarly to a wheelbarrow, but in a
> more efficient manner.  XYZ is not a subcontractor and is making a retail rental of
> equipment with an operator.

Former Rule 211(8)(c).

The 2021 amendments made a few technical changes to the existing provisions of Rule

211.  But the primary changes were replacing the 2006 examples with different and more

extensive examples.  The amendments modified the examples involving a crane operator:

> Example 6.  ABC Crane Co. is hired by DEF Builders Co. to supply a crane and
> operator to lift air conditioning equipment from the ground and hold it in place on
> the roof of a six story building while DEF employees bolt the unit down.  ABC's
> operator will retain control over the crane.  ABC has no responsibility to attach
> wiring, plumbing, or otherwise make the unit operational.

> In this scenario, ABC's business activity is classified as a rental of equipment with
> an operator the charges for which are subject to retailing B&O and retail sales tax.
> RCW 82.04.050(9).  This is demonstrated by the fact that ABC is not responsible
> for the performance of any services, other than those necessary to operate the crane.

> Example 7.  ABC Crane Co. (ABC) is hired by DEF Builders Co. (DEF), the prime
> contractor, to install a neon sign on the side of a new six-story building DEF is
> constructing.  At the time of purchase, DEF provides ABC with a reseller permit in
> lieu of paying retail sales tax.  ABC is responsible for making certain that the sign
> is correctly fastened to the side of the building and in accordance with the contract
> specifications established between DEF and the property owner.

> In this scenario, ABC's business activity is classified as a construction service, the
> charges for which are generally subject to retailing B&O and retail sales tax.  RCW
> 82.04.050(2).  However, in this scenario the charges are subject to wholesaling
> B&O tax, as construction services are eligible for resale, and ABC received a

reseller permit from DEF, who is reselling construction services to the property owner.

Rule 211(8).

The 2021 amendments included three examples involving concrete pumping services:

Example 9.  DEF Builders Co. (prime contractor) is hired to construct an apartment complex.  DEF is performing a significant portion of the construction services associated with the project on its own behalf, including construction of the building's foundation.  After constructing forms for the apartment's foundation, DEF contracts with XYZ Concrete Co. to pump premixed concrete from a ready mix truck (located at the construction site) into the forms.  XYZ operates its own pumping equipment, however, DEF controls the flow and placement of the concrete, directing XYZ's operator to start and stop the pump.  The premixed concrete is not provided by XYZ.  DEF is responsible for finishing the concrete.

*In this scenario, XYZ is providing stand-alone concrete pumping services, and its business activity is classified as a rental of equipment with an operator, the charges for which are subject to retailing B&O and retail sales tax.*  Additionally, XYZ's activity is not eligible for resale, as DEF is considered the consumer of the operated rental equipment.

Example 10.  DEF Builders Co. (prime contractor) is hired to construct an apartment complex.  DEF is performing a significant portion of the construction services associated with the project on its own behalf, including construction of the building's foundation.  After constructing forms for the apartment's foundation, DEF contracts with XYZ Concrete Co. to provide premixed concrete and to pump for the pour.  XYZ operates its own pumping equipment, however, DEF controls the flow and placement of the concrete, directing XYZ's operator to start and stop the pump.  At the time of its purchase, DEF provides XYZ with a reseller permit in lieu of paying retail sales tax.

In this scenario, where the taxpayer is providing both the concrete materials and the concrete pumping equipment and pumping services, XYZ's activity is classified according to subsection (2)(e)(iii) of this rule.  In this case, the transaction's true object (or primary purpose) is the sale of premixed concrete.  The sale of tangible personal property (concrete) for resale is subject to wholesaling B&O tax.

Example 11.  DEF Builders Co. (prime contractor) is hired to construct an apartment complex.  DEF hires subcontractors to perform a significant portion of the construction services associated with the project, including construction of the building's foundation.  DEF contracts with XYZ Concrete Co. to pour and finish the building's concrete foundation, including construction of forms to pour the foundation.  XYZ operates its own pumping equipment, in addition to providing on-site contractors who will manage the flow and placement of the pumped

14

concrete. After the pour, XYZ is responsible for finishing the concrete. XYZ's contract with DEF requires the finished foundation meet the contract specifications entered into between DEF and its customer, the building owner.

In this scenario, XYZ's business activity is classified as the sale of subcontracted construction services, the charges for which are subject to wholesaling B&O tax, provided XYZ received a reseller permit from DEF.

Rule 211(8) (emphasis added).

In addition to Rule 211, Rule 170 also addresses the rental of equipment. At least since 1987, Rule 170 has provided a definition of "subcontractor" that "includes persons who rent or lease equipment to prime contractors or subcontractors for use in respect to constructing, repairing, etc., when such equipment is operated by the lessor." Rule 170(1)(b). Further, Rule 170(3)(a) states that subcontractors are taxable under the wholesaling classification.

C.      STATUTORY AUTHORITY FOR RULE 211

Brundage-Bone argues that Rule 211 is invalid because it exceeds DOR's statutory authority in that it conflicts with RCW 82.04.050(14). We disagree.

RCW 82.04.050(9) states that a retail sale includes "providing tangible personal property along with an operator for a fixed or indeterminate period of time." However, a service defined in RCW 82.04.050 is *not* a "sale at retail" if it amounts to "the sale for resale of any service." RCW 82.04.050(14). And RCW 82.04.060(3) provides that a "wholesale sale" or "sale at wholesale" includes "the sale of any service for resale, if the sale is excluded from the definition of 'sale at retail' and 'retail sale' in RCW 82.04.050(14)."

Under these statutory provisions, the issue is whether providing stand-alone concrete pumping services to a prime contractor constitutes the sale of a service for resale under RCW 82.04.050(14) and RCW 82.060(3). In other words, the question is whether a contractor renting a pumping truck with an operator resells concrete pumping services to the project owner. No

cases have addressed RCW 82.04.050(9) or RCW 82.04.050(14). And no statute defines what constitutes a "sale for resale" of a service.

Brundage-Bone asserts that RCW 82.04.050(9) is subject to the "sale for resale" exclusion from the definition of retail sale in RCW 82.04.050(14). Brundage-Bone focuses on the term "any services" in RCW 82.04.050(14). Brundage-Bone contends that the sale of concrete pumping services to a contractor or subcontractor constitutes a sale for resale because the contractor resells those services to the "consumer" – the project owner.

DOR's interpretation, expressed in Rule 211, depends on the nature of the services the concrete pumper provides. If the operator merely provides pumping services, rental of the pumping equipment is a retail sale and is not a sale for resale. Rule 211(4), (5)(b), (6)(a), (8) (example 9). But there is no retail sale if the operator also "is responsible for performing construction to contract specifications and assumes control over how the work will be performed." Rule 211(5)(b); *see also* Rule 211(8) (example 11).

DOR emphasizes that this interpretation is consistent with RCW 82.04.050. Under RCW 82.04.050(2)(b), a contractor's construction of a building for the project owner constitutes a retail sale. The contractor must pay the B&O retail tax and must collect sales tax from the project owner. Therefore, it makes sense that the sale of services or materials to the contractor *that will be incorporated into the building* is a sale to the contractor for resale to the project owner. The cost of those services or materials will be included in the total price paid by the project owner, which is subject to the B&O retail tax and sales tax. When a concrete pump operator also is responsible for providing additional construction services regarding the contract specifications for the finished concrete, those services are incorporated into the building and are resold to the owner.

16

However, the analysis is different when a contractor rents equipment with an operator. Neither the pumping truck nor the operator's services are incorporated into the building. In that situation, the contractor – not the project owner – is the "consumer" of the equipment and the operator's services. The contractor does not resell the equipment and services to the project owner. Instead, the contractor merely uses the equipment and services just like they would rent and use a backhoe, crane, or other tool. DOR characterizes the pumping truck as a fancy wheelbarrow. Just as the contractor would not resell a wheelbarrow to the project owner, neither are they reselling the pumping truck and pumping services to the project owner.

Under this analysis, the contractor does not rent concrete pumping services for resale to the project owner. Therefore, RCW 82.04.050(14) and RCW 82.04.060(3) are inapplicable. And RCW 82.04.050(9) controls: a retail sale includes "providing tangible personal property along with an operator for a fixed or indeterminate period of time."

As noted above, rental of a pumping truck with an operator may not be a retail sale and might constitute a sale for resale if the operator does more than merely pump concrete and instead "is responsible for performing construction to contract specifications and assumes control over how the work will be performed." Rule 211(5)(b). In this case, the operator is providing services that are incorporated into the building, and therefore constitute a resale to the project owner. This scenario is illustrated in example 11, where the concrete pumping company not only pumps the concrete but also is responsible for the construction of forms and finishing the concrete. In this situation, the activity is the sale for resale and subject to the wholesaling B&O tax. Rule 211(8) (example 11).

Because of the posture of this case, we need not determine whether DOR or Brundage-Bone has the "better" interpretation of the relevant statutory provisions. Specifically, the issue

17

here is not the meaning of RCW 82.04.050(14). The only issue is whether Rule 211 is invalid because it exceeds DOR's statutory authority. The ultimate question regarding statutory authority for Rule 211 is whether the rule is " 'reasonably consistent with the controlling statute[s].' " *Ctr. for Biological Diversity*, 14 Wn. App. 2d at 967 (quoting *Wash. Pub. Ports Ass'n*, 148 Wn.2d at 646).

We conclude that Rule 211 is reasonably consistent with RCW 82.04.050(9) and (14) and RCW 82.04.060(3). Under RCW 82.04.050(9), the provision of tangible personal property with an operator is a retail sale. Brundage-Bone relies on the "sale for resale" provision of RCW 82.04.050(14), but the statute does not define that term. It is reasonable for DOR to classify stand-alone concrete pumping services as a retail sale to the contractor rather than as a resale from the contractor to the project owner because the contractor is using the pumping services rather than incorporating them into the building.

Accordingly, we hold that the trial court did not err in denying Brundage-Bone's challenge to Rule 211 based on a conflict with RCW 82.04.050(14).

D.    CONFLICT BETWEEN RULE 211 AND RULE 170

Brundage-Bone argues that Rule 211 is invalid because it conflicts with Rule 170. We disagree.

Rule 170 applies to construction upon real property. Its definition of "subcontractor" includes "persons who rent or lease equipment to prime contractors or subcontractors for use in respect to constructing, repairing, etc., when such equipment is operated by the lessor." Rule 170(1)(b). Rule 170 provides that subcontractors are subject to wholesaling B&O tax upon the gross contract price for services provided to prime contractors or others. Rule 170(3)(a). Under

this rule, a person providing concrete pumping services is a "subcontractor" that falls within the wholesaling classification.

But Rule 211, which governs leases or rentals of tangible personal property, has a different definition of "subcontractor." Rule 211(2)(c) defines "subcontractor" as someone who "is generally responsible for performing the work to contract specification and determines how the work will be performed." The rule further states that when someone purchases the services of a subcontractor, they are "primarily purchasing the knowledge, skills, and expertise of the contractor to perform the task, as distinguished from the operation of the equipment." Rule 211(2)(c). In other words, to qualify as a subcontractor a concrete pumping service provider must do something more than merely operating the pumping equipment. Rule 211(5)(b), (8) (examples 10, 11).

Brundage-Bone argues that Rule 170 states the correct test and that Rule 211 improperly treats concrete pumping companies differently than other subcontractors subject to Rule 170.

DOR acknowledges that Rule 170 is inconsistent with Rule 211. But DOR argues that because the fact that Rule 211 is inconsistent with Rule 170 does not meant that it has exceeded its statutory authority. DOR explains that Rule 170's definition of "subcontractor" is incorrect and outdated. That rule predates the legislature's enactment of RCW 82.04.050(9), which classified the provision of tangible personal property with an operator as a retail sale. DOR argues that Rule 211 controls over the conflicting language in Rule 170(1)(b) because it is more up-to-date and involves a more specific subject matter.

We agree with DOR. We may invalidate an agency rule only if it exceeds statutory authority, is unconstitutional, was adopted without compliance with statutory rule-making procedures, or is arbitrary and capricious. RCW 34.05.570(2)(c); *Nw. Pulp & Paper Ass'n*, 200

Wn.2d at 672. Conflict with another rule is not the basis for invalidating a rule. In addition, we agree that the more recent rule should control over an older rule.

We conclude that the conflict between Rule 211 and Rule 170 does not provide a reason to invalidate Rule 211.

E.      ARBITRARY AND CAPRICIOUS CLAIM

Brundage-Bone argues that DOR was arbitrary and capricious in amending Rule 211. We disagree.

1.      Legal Principles

We will consider an agency action to be arbitrary and capricious only if the action is " 'willful and unreasoning and taken without regard to the attending facts or circumstances' " *Whidbey Env't Action Network v. Growth Mgmt. Hr'gs Bd.*, 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020) (quoting *Att'y Gen.'s Off. v. Utils. & Transp. Comm'n*, 128 Wn. App. 818, 824, 116 P.3d 1064 (2005)). If there is room for two opinions and the agency duly considered its action, the action is not arbitrary and capricious. *Whidbey Env't Action Network*, 14 Wn. App. 2d at 526. Even if the reviewing court believes the action was erroneous, the court will affirm the action if taken with due consideration. *Id*. The existence of contrary evidence also does not render an agency decision arbitrary and capricious. *Id*.

We base our review of whether an agency rule is arbitrary and capricious on the rule-making file and the agency's explanations for the rule. *Wash. Rest. Ass'n v. Liquor and Cannabis Bd.*, 10 Wn. App. 2d 319, 341, 448 P.3d 140 (2019).

2. Analysis

DOR proposed amendments to Rule 211 and explained that its intention was to clarify the tax treatment of concrete pumping services. Specifically, DOR stated in its interim guidance statement that:

> [Rule 211] provides that concrete pumpers providing a concrete pump and operator to pump concrete are subject to the retailing B&O and retail sales tax. However, the Department's industry guide also indicates that concrete pumping services are considered construction services. This interim guidance statement is intended to clarify the tax treatment of certain concrete pumping services.

AR at 1.

DOR held four public meetings at which stakeholders shared their comments and concerns about the proposed amendments. DOR then responded to stakeholders' written comments in a concise explanatory statement. The record shows that DOR conducted a reasoned and thoughtful rulemaking process, and that its decision to amend Rule 211 in 2021 was rooted in the record and supported by DOR's guiding statutes. For that reason, we hold that DOR's 2021 amendments to Rule 211 were not arbitrary and capricious.

Brundage-Bone argues that DOR failed to explain why they changed their tax treatment of concrete pumping services when it updated Rule 211. They claim that DOR failed to include a rationale for their updates to Rule 211 in the rulemaking record. They argue that DOR's explanatory statement merely explains *what* the DOR was doing, but does not explain *why* they were doing it. Finally, they argue that the conflicting guidance that DOR purported to address in the amendments to Rule 211 did not exist on their website – rather, they contend that DOR's interim guidance statement was the cause of that conflict.

These arguments are not persuasive. DOR explains in the interim guidance statement why it issued the statement. The interim guidance statement was part of the rulemaking file, and

21

was available for stakeholders to review. Asserting that DOR failed to provide a rationale for its amendments to Rule 211 when that explanation is clearly in the interim guidance statement elevates form over substance. DOR explained why it began the rule-making process and provided the statutory authority on which it relied, and it responded to comments received during the rule-making process.

Next, Brundage-Bone argues that stakeholders raised multiple issues on the record before the DOR, and that DOR failed to address their concerns. They claim that the agency failed to act on stakeholder comments. They point to DOR's statement that it "did not make any changes to the proposed rule amendments based on the comments received." AR at 44.

However, as stated above, an agency action is not arbitrary and capricious merely because there is room for disagreement on the issue. *Whidbey Env't Action Network*, 14 Wn. App. 2d at 526. Here, although there was disagreement from many of the stakeholders, not every concrete pumping stakeholder disagreed with DOR's proposed changes to Rule 211. In addition, DOR is not required to act on stakeholder comments – rather, they have a duty to conduct a reasoned rulemaking process that considers the relevant facts and circumstances. *Id.* The amendments to Rule 211 did not violate DOR's statutory authority and DOR properly responded to stakeholder comments.

Finally, Brundage-Bone argues that DOR treats concrete pumping services differently than other subcontracted labor services in contravention of RCW 82.04.050, RCW 82.04.060, and the rulemaking file. But as explained above, the 2021 amendments to Rule 211 did not exceed DOR's statutory authority under RCW 82.04.050 or RCW 82.04.060. Nothing in the rulemaking file supports the notion that DOR was "willful and unreasoning" in its decision to amend Rule 211.

We hold that DOR's 2021 amendments to Rule 211 were not arbitrary and capricious.

CONCLUSION

We affirm the trial court's order denying Brundage-Bone's challenge to Rule 211.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
PRICE, J.

_____
CHE, J.